[No. 1799]

MRS. ANNIE FITCHETT, ET AL., APPELLANTS, v. W. J. HENLEY, JUSTICE OF THE PEACE, RESPONDENT.

1. CERTIORARI—EXISTENCE OF OTHER REMEDY—APPEAL.
   *Certiorari* will not lie where the right of appeal exists.

## ON REHEARING

1. LANDLORD AND TENANT—UNLAWFUL DETAINER—JURISDICTION.
   Under the Constitution, art. VI, sec. 8, giving justice courts jurisdiction of actions for the possession of lands, where the relation of landlord and tenant exists, and when such possession has been unlawfully withheld, and Comp. Laws, 3835, authorizing actions in justice courts against a tenant unlawfully holding over, etc., a justice court has jurisdiction to render judgment for plaintiff for the restitution of real estate, for rent due, and for damages for deprivation of the premises, where defendant in his answer admits the execution of the lease and the payment of rent under it, as such admission establishes the relation of landlord and tenant.

2. LANDLORD AND TENANT—TITLE OF LANDLORD—ESTOPPEL.
   A tenant, sued in unlawful detainer, who admits the execution of the lease and payment of rent under it, is estopped from attacking the landlord's title by proving that the landlord falsely represented that he owned the land when he was without title, and a defense relying on such false representations raises no issue.

3. LANDLORD AND TENANT—TITLE OF LANDLORD—ESTOPPEL.
   As prior possession is *prima facie* evidence of title, and, in the absence of a better title, is deemed equivalent to title, a tenant, prevented from disputing the landlord's title, may not show that the landlord had no title by prior possession, or in fee.

4. LANDLORD AND TENANT—FRAUD OF LESSOR—EFFECT.
   Where a tenant in a lease from a landlord, who falsely represented that he owned the land when he was without title, had all the right he could have had if the landlord had been the owner in fee, and the right of the tenant to hold, retain, or remove improvements placed on the land was not affected by the landlord's misrepresentations, the misrepresentations were immaterial as to the rights of the parties.

5. LANDLORD AND TENANT—FRAUD OF LESSOR—EFFECT.
   That the tenant had erected improvements on the premises under a prior lease did not give him any right to repudiate the later lease.

6. JUSTICES OF THE PEACE—DECISIONS APPEALABLE—DEFAULT JUDGMENT.
   Where a motion for judgment in the justice court on the pleadings was argued and submitted by consent, with a motion to remove the cause to the district court, and no request to amend, or offer to amend, the answer, which was apparently complete in its allegations, was made, there was in effect a submission by consent on an agreed statement of facts, and the judgment for plaintiff was appealable as against the objection that it was a default judgment.

Opinion of the Court—Sweeney, J.

7. JUSTICES OF THE PEACE—JURISDICTION—AMOUNT IN CONTROVERSY.
Under Constitution, art. VI, sec. 8, providing that justice courts shall not have jurisdiction where the amount in dispute is a money demand, and, exclusive of interest, exceeds $300, a judgment in a justice court for $396 treble damages for a tenant wrongfully withholding possession of the premises, and for $100 rent due, is void because beyond the jurisdiction of the court.

8. JUSTICES OF THE PEACE—APPEAL—JURISDICTION OF DISTRICT COURT.
The district court, on appeal from a justice's judgment, has the same jurisdiction as existed in the justice court, and a judgment of a justice court, which is void because for a greater amount than a justice has jurisdiction to render, is not appealable.

9. JUSTICES OF THE PEACE—CERTIORARI—EXISTENCE OF REMEDY BY APPEAL.
*Certiorari* lies to annul a justice court judgment, void because in excess of the jurisdiction of a justice court, since there is no right of appeal.

10. APPEAL AND ERROR—DISPOSITION OF CAUSE ON APPEAL—REMISSION.
The court, on appeal from an order dismissing a writ of *certiorari* to annul a justice court's judgment, void because beyond the justice court's jurisdiction, cannot on the offer of respondent remit a part of the judgment and limit it to a sum within the jurisdiction of a justice court.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Esmeralda County; *F. P. Langan,* Judge.

*Certiorari* by Mrs. Annie Fitchett and others against W. J. Henley, Justice of the Peace. From judgment dismissing the writ, plaintiffs appeal. **Affirmed.** On petition for rehearing. **Former opinion reversed, and judgment below reversed.**

The facts sufficiently appear in the opinion.

. *James Donovan,* for Appellants.

*Pyne, Douglass & Tilden,* for Respondent.

By the Court, SWEENEY, J.:

Ben Hazelton commenced an action in unlawful detainer in the Justice Court of Goldfield Township, Esmeralda County, Nevada, against appellants, Mrs. Annie Fitchett, *et al.* The appellants in this case, who were the defendants, filed an answer setting up title, possession, and the right of possession in the defendants. The plaintiff moved for judgment upon

the pleadings, which the court granted. Later on a writ of
*certiorari* was sued out in the district court in and for Esme-
ralda County to review the action of the justice of the peace.
Said writ was granted in May, 1908, and later on a motion
was made to vacate and discharge the writ, which motion was
submitted to the judge of the district court, and, after argu-
ment by counsel for the respective parties, sustained, and from
which final judgment discharging the writ appellants appeal
to this court, assigning as error the judgment and order of the
lower court dismissing said writ of *certiorari.*

The appellants had the right of appeal from the judgment
rendered against them in the justice court to the district
court. The law is well established that a writ of *certiorari*
will not lie where the right of appeal exists. (*Chapman* v.
*Justice Court,* 29 Nev. 154, and authorities therein cited.)

The judgment and order of the lower court are affirmed.

## ON REHEARING

*PER CURIAM:*

Being impressed with appellants' application for rehearing,
which is apparently urged with great sincerity, we have con-
sidered the case more carefully, and, owing to the importance
of the questions involved, we will give them a more extended
review.

In the original complaint filed by Ben Hazelton as plaintiff
in the justice's court it is alleged that he and Mrs. Annie
Fitchett, a married woman, and her husband, who are made
defendants therein, entered into a lease whereby he leased
to her for a period of one year from September 15, 1907, a
described lot of ground situated in the town of Goldfield, and
that by said lease she agreed to pay as rent for said premises
the sum of $175 per month on the 15th day of each month.
A copy of the lease was attached to and made a part of that
complaint, and among others it contained the following pro-
visions:

"And it is agreed that if any rent shall be due and unpaid,
or if default shall be made in the performance of any of the
covenants herein contained on the part of the party of the
second part, then it shall be lawful for the said party of

the first part to reenter the said premises and remove all persons therefrom. And the said party of the second part does hereby promise and agree to pay to the said party of the first part the said monthly rent herein reserved in the manner herein specified.   *   *   *"

"And at the expiration of said term, or any sooner determination of said lease, the said party of the second part will quit and surrender the premises hereby demised in 'as good order and condition as reasonable use and wear thereof will permit, damages by the elements excepted. And if the party of the second part shall hold over the said term with the consent, expressed or implied, of the party of the first part, such holding over shall be construed to be a tenancy only from month to month and said second party will pay the rent as above stated for such further time as she may hold the same. *   *   *   It is further agreed that any and all buildings at present standing on said premises, or to be hereafter erected thereon, shall be and remain as a lien for said rent and shall not be removed from said premises during the term of this lease without the written consent of the party of the first part first had and obtained.   *   *   *"

The answer filed on her behalf in the justice's court admits the execution of the lease, the demand for $175 claimed to be due as rent, and the failure to make this payment, denies that she entered as plaintiff's tenant, and alleges that the lease was changed on or about the 15th day of December, 1907, and a verbal lease made, whereby it was agreed between the plaintiff and defendant that the rent should be only $100 per month. The answer further alleged: "(1) That on or about the 15th day of June, 1904, the defendants, being desirous of entering into business in Goldfield, secured a location therefor, and made inquiry as to the ownership of the land described in plaintiff's complaint, and by and through representations made by the plaintiff and his agents and attorneys to the defendants that said plaintiff was the owner in fee of said land described in plaintiff's complaint, and relying upon said representations so made by the plaintiff, the defendants entered into an agreement whereby the defendants leased said ground from the plaintiff. (2) That when said ground

was so leased by the defendants from the plaintiff, the same was open and unoccupied land, and had no improvements thereon. Relying upon said representations of the plaintiff aforesaid, the defendants erected on said vacant ground, as heretofore described, certain valuable improvements to the extent of $2,000, and, relying upon said representations so made by the plaintiff, the defendants continued to pay the plaintiff rental therefor from time to time, and took possession of said ground, relying wholly upon the representations that the plaintiff was the owner in fee of said land, and continued to pay rent therefor up to the time set forth in plaintiff's complaint. (3) That during the months of January and February, 1908, the defendants and each of them began an investigation of the title of the plaintiff, and, after making such investigations, discovered that the representations so made by the plaintiff to the defendants, and upon which the defendants relied, which representations so made by the plaintiff being the basis of the agreement whereby the defendants paid rent to the plaintiff for the use and occupancy of said ground aforesaid, were false, and that said plaintiff did not own the fee to said lot, and never had title to the same, although falsely representing to the defendants that the plaintiff was the owner of said ground aforesaid, and that upon discovering that said plaintiff was not the owner in fee of said lot aforesaid, defendants and each of them refused to pay any ground rental therefor. * * *"

Among other extended allegations of that answer it was alleged that the land in question was a portion of what is known as the "Goldfield Placer Claim," located about the time of the discovery of gold in Goldfield; that this placer location was made and recorded without first having discovered gold within the boundaries of the location; that the ground was located for the single purpose of platting the surface into town lots for speculation; that the annual assessment work had not been performed for the years 1906 and 1907; that the defendants had been in the peaceable, quiet, and uninterrupted possession of the land described in the lease since the 15th day of June, 1904; that while so in possession of the land, and on or about the 11th day of May, 1907, which was a date prior

to the lease admitted by the answer, an amended application was made by the settlers of Goldfield to enter certain lands under the federal town-site act, and that said Goldfield Placer is a part of the land included in the application so filed; that after certain orders, publications, and proceedings and proofs made to the General Land Office, on the 13th day of April, 1908, the protest made on behalf of the Goldfield Placer was by an order of the land office dismissed as being without any claim or right, and it was further alleged that neither the plaintiff nor his grantors had any right, claim, interest, possession, or right of possession, to the land leased, and whatever claim plaintiff and his grantors asserted to this land has been without right in law or fact, and has been made for the sole purpose of extorting money from the defendants by falsely representing that plaintiff and his grantors were the owners in fee of the land; that the land mentioned is now, and at all times before mentioned has been, the property of the government of the United States, and that the fee is in the United States subject to the application to town-site the same, and that the title to the land is now in process of transmission from the federal government to the judge of the district court as trustee to grant title to each and every person having improvements on the land within the town-site application; that the defendants are the owners of, and caused to be placed, all the improvements upon the lot leased.

It is apparent that the appellant, while holding a lease for the premises by the terms of which she expressly agreed to surrender possession to Hazelton at the end of the year for which the lease was given, or sooner upon default being made in the payment of rent, is now seeking to avoid these written conditions to which she obligated herself, by asserting that Hazelton falsely represented that he owned the land in fee, when in fact he did not own it and the title was in the government, by claiming that she is entitled to hold the land regardless of the lease and the payment of rent, because of her improvements and possession of the land, and under an application of the inhabitants of Goldfield for a town site made prior to the lease in controversy, and at a period when she was holding under one of the leases which she obtained

from Hazelton, who was a prior claimant to the land, the first of these dating back to 1904. Plaintiff moved for judgment on the pleadings, and defendants moved to have the cause certified to the district court for trial, under the claim that a question involving the title to real estate was raised which the justice's court could not try, which motions were argued and submitted together upon the pleadings, and the question of the monthly rental of the premises was excepted and continued until later. Judgment was rendered in the justice's court in favor of the plaintiff for the restitution of the premises, for $100 rent from March 15th to the 3d day of April, 1908, and $132 damages for the deprivation and use of the premises from the 3d day of April, 1908, and that the last sum be trebled, which with the $100 for rent makes the judgment aggregate $496 besides costs.

Did the answer raise a question regarding the title to real estate which the justice was without jurisdiction to try, and which necessitated a transfer of the case to the district court? We quite agree with the contentions, made on behalf of the appellants, that if a question involving the title to real estate was properly raised, the justice was without jurisdiction to try the case, and consequently the judgment would be void, and there would be no appeal to the district court, and the appellants would be entitled to have the case ordered to the district court for primary trial. However, we believe the justice had jurisdiction to try the case under section 8, article VI, of the Constitution, which allows jurisdiction in the justice's court of "actions for the possession of lands and tenements where the relation of landlord and tenant exists and when such possession has been unlawfully and fraudulently withheld," and under different sections of the Compiled Laws, including section 3835, which provides: "When any person or persons shall hold over any lands, tenements, or other possessions, after the termination of the time for which they are demised or let to him, her or them, or to the person or persons under whom he, she or they hold, or after any rent shall become due, according to the terms of such lease or agreement, and shall remain unpaid for the space of three days after demand for payment thereof, in all such case, if the lessor, his heirs,

executors, administrators, assigns, agent or attorney, shall make demand in writing of such tenant or tenants, or any person in possession of the premises, that he, she or they shall deliver possession of the premises held as aforesaid; and if such tenant or tenants, or person or persons in possession of the premises, shall refuse or neglect for the space of three days after such demand to quit the possession of such lands or tenements, or to pay the rent due and unpaid as aforesaid, upon complaint therefor to any justice of the peace of the proper county, the justice shall proceed to hear, try, and determine the same in the manner in this act provided."

The admission in the answer that Mrs. Fitchett executed the lease and paid rent under it establishes the relation of landlord and tenant. Under this admission the cases, some of which are cited in the brief, are very numerous holding that the tenant is estopped from denying the landlord's title. There are some exceptions to this rule, but we are not aware of any which would allow her to set up as a defense the facts which she alleges in her answer. If these facts are no defense in law, and are such that she is prevented from setting them up by way of attack upon the title of the landlord which she recognized by execution of the lease, their assertion would be of no avail in an effort to have the case removed to the district court for trial, for if they could not be asserted against the landlord, they cannot be considered as raising an issue for trial, or as of any force before either the justice's court or district court.

Referring more specifically to the allegations that the lessor falsely represented that he owned the land in question, when he was without title, and that all the improvements were placed on the premises by the appellants, these may not only be classed as an attempt to question the lessor's title, which the lessee is prevented from doing, but may be considered as immaterial and not affecting the lease, nor in any way damaging appellant under the terms of the lease. Prior possession is *prima facie* evidence of title, and, in the absence of a better one, must be deemed equivalent to title (*Rogers* v. *Cooney*, 17 Nev. 117; *V. & T. R. R. Co.* v. *Lynch*, 13 Nev. 93), and hence the rule that the tenant is prevented from disputing the

landlord's title prevents the tenant from claiming that the lessor had no title by prior possession or in fee. As is said in *Goode* v. *Gaines*, 145 U. S. 152, 12 Sup. Ct. 841 (36 L. Ed. 654): "The estoppel which prevents a tenant who has acquired possession as such from claiming title adversely to his landlord does not depend on the validity of his landlord's title." Large interests in the western states carrying farms, mills, and town property are often held merely by possession.

So far as it appears, the appellant is secure in all that is purported to be granted her by the terms of the lease, and is not disturbed in her possession of the premises except by a notice and demand, resulting from her failure to pay rent according to the terms of the lease. It would seem that, if the lessor is not the owner in fee of the premises, she still had all the right and benefit that she would or could have had if he had been the owner in fee. If he represented that he was such owner as alleged in the answer, such representation would seem to be as immaterial to the rights of the parties as if he had represented that he was the owner of a million dollars or the earth, so long as she was undisturbed, and had the full use of the premises, upon the payment of rent as she agreed.

In *McCoy* v. *Bateman*, 8 Nev. 129, the court said: "Appellants had enjoyed their term and received all that they had bargained for. It was not for them to be picking flaws in respondent's title. * * *" Nor does it appear that she has not the same right of holding, retaining, or removing any improvements on the land that she would have if he were the owner in fee, or that she has not enjoyed every advantage which would have belonged to her if he had been such owner, as she claims he represented. If all the rights which she might acquire under the town-site laws by reason of her possession and improvements did not inure to the benefit of the lessor from whom she took the lease, as held by so many decisions, it would seem that under its terms she would be estopped from asserting any adverse title, and would be obligated to surrender the premises upon the termination of the lease or the failure to pay rent, as she had agreed. If the lessor falsely represented, as claimed, that he was the owner

of the premises, when he was without title, and by reason of such misrepresentation and failure of title some damage had resulted to the appellant, she might be entitled to some relief—for instance, if some one else had owned the premises, and had ousted the appellant, it would be an injury and a wrong thereafter to require her to pay rent to the lessor, and the same would be true if she had acquired his right or claim to the land.

As said by this court in *Hoopes* v. *Meyer*, 1 Nev. 444: "The text-books lay down the general proposition that a tenant can only plead an eviction by paramount title as an excuse for nonpayment of rent. The words 'paramount title' are used in such cases in a general and not technical sense, to distinguish an eviction by one having lawful authority to hold as against the tenant from an eviction by a mere trespasser. If a tenant is evicted by a trespasser, the law affords him the means of being reinstated. It is his duty to resort to that remedy. He cannot refuse to pay his rent because of a wrong done to him or his possession by a stranger. But if he is evicted by one who has the right of possession, one against whom the defendant could not maintain an action to recover back the possession, then he is excused from paying his rent."

This case is distinguishable from that of *Phenix* v. *Bijelich*, 30 Nev. 259. There, although part of the contract purported to be a lease, it was in effect an agreement of sale, and the purchaser who had placed valuable improvements might be greatly injured by the failure to receive title, which, it was alleged, had been represented to exist in the party who had agreed to convey, when, by reason of the failure to receive the title as represented, he might lose both his improvements and the title. Here the appellant would have fully as much right to retain or remove the improvements if the lessor is without title, as she asserts, as she would have if he owned the premises in fee, as she claims he falsely represented. If she were not estopped by the lease to deny his title, proof on her part that he was not possessed of any would still be immaterial; for it would not tend to show any damage, while it stands admitted that she has received all benefits contemplated by

the lease, which she could have obtained if he had possessed that title.

Although it is alleged that no buildings or improvements were put on the lot by the lessor, it appears from the allegations and admissions in the answer in the justice's court that the appellant, under different leases executed by her, paid rent to the lessor from June 15, 1904, to March, 1907, nearly four years, and that the buildings and improvements had been placed on the ground by appellant while so leasing, and it is not denied that during this time, and prior thereto, the lessor held a deed to the ground, and was prior claimant under color of title, and believed that he was the owner of the lot by conveyance from the locators of the placer claim or town site, or that the appellant was not aware or was not at least chargeable with notice during that time, as well as thousands of other inhabitants of Goldfield, that the land had not been surveyed or patented by the government. As appellant is trying to avoid the last lease only, the placing of the improvements on the lot by her under an earlier lease would seem to have the same legal effect as if they had been placed on the ground by some former tenant of the lessor, which would be in support of his possession and claim. The fact that she has erected the buildings or made all the improvements on the premises since she entered into the lease, or into the prior lease with the lessor, would not give her any right to repudiate the lease; for if, claiming under these improvements, she obtained a patent to the lot, she might be compelled to convey the title to the lessor, under the decisions of the Supreme Court of the United States in the Hot Springs cases and others.

In *Rector* v. *Gibbon*. 111 U. S. 276, 4 Sup. Ct. 605, 28 L. Ed. 430, the court said: "Lessees under a claimant or occupant, holding the property for him, and bound by their stipulation to surrender it on the termination of their lease, stand in no position to claim an adverse and paramount right of purchase. Their possession is, in law, his possession. The contract of lease implies, not only a recognition of his title, but a promise to surrender the possession to him on the termination of the lease. They, therefore, whilst retaining possession are estopped

to deny his rights. (*Blight* v. *Rochester*, 7 Wheat. 535, 5 L. Ed.
516.) This rule extends to every person who enters under
lessees with knowledge of the terms of the lease, whether by
operation of law, or by purchase or assignment. The lessees
in this case and those deriving their interest under them could
therefore claim nothing against the plaintiff by virtue either of
their possession, for it was in law his possession, or of their
improvements, for they were in law his improvements, and
entitled him to all the benefits they conferred, whether by pre-
emption or otherwise. Whatever the lessees and those under
them did by way of improvements on the leased premises
inured to his benefit as absolutely and effectually as though
done by himself." This case was followed in *Goode* v. *Gaines*,
*supra*.

In *Ellis* v. *Fitzpatrick*, 118 Fed. 431, 55 C. C. A. 261, the
court said: "It was alleged by the defendant, as the principal
ground of demurrer, that the complaint was defective, in that
it nowhere alleged that the plaintiff at the time of or prior to
the institution of the suit, had made any improvements on
the demised premises that were of a permanent or substantial
character. It is claimed that the complaint stated no cause
of action, because it failed to contain such an allegation.
With reference to this contention on the part of the defend-
ant the court of appeals in the Indian Territory said, in sub-
stance—and we think that the proposition so enunciated is
sound—that a tenant cannot in the Indian Territory, any
more than elsewhere, deny the title of his landlord, under
whom he has entered into possession of premises, and to
whom he has paid rent, because there were no valuable
improvements on the leased premises when he entered. We
are aware of no rule of law which permits a tenant to deny
the title of his landlord for that reason."

It is claimed that the court improperly granted the motion
for judgment on the pleadings; but, as this was argued and
submitted apparently by consent with the motion to remove
the case to the district court, and as the answer appears to be
very complete in its allegations, and no request to amend or
offer to allege anything further was made, it would seem that
this was equivalent to submission by consent upon an agreed

statement of facts, and it does not appear that for this reason there was error, or that the judgment in effect is one by default from which no appeal could be taken.

The judgment for $396 treble damages, in addition to $100 rent, was beyond the jurisdiction of the justice's court, because section 8, article VI, of the Nevada Constitution provides that justice's courts shall not have jurisdiction of cases in which the matter in dispute is a money demand, and the amount, exclusive of interest, exceeds $300. The circumstances were different in the case of O'Callaghan v. Booth, 6 Cal. 63, upon which reliance is placed. Nor would we feel inclined to adhere to the conclusions reached by the court in that decision if the facts were applicable to the present case. There the action was commenced in the justice's court and appealed to the county court, where a judgment was rendered for treble damages in the sum of $12,150. Under the rule in this state that the district court has the same jurisdiction on appeal as existed in the justice's court, in the absence of any authorized exception, we think a judgment for an amount so large rendered in the justice's court or on appeal, could not be sustained.

In the case of Small v. Gwinn, 6 Cal. 449, the court said: "In Zander v. Coe, 5 Cal. 230, we decided that the legislature could not confer on justices of the peace any jurisdiction where the amount in controversy exceeds $200. There can be no exception to this rule.   *   *   *"

In 9 Ency. Pl. & Pr. 71, it is said: "The judgment for damages or rent which may be given by a justice of the peace, or on a trial de novo on appeal therefrom, must be limited to the constitutional amount over which the justice has jurisdiction."

In Ballerino v. Bigelow, 90 Cal. 500, 27 Pac. 372, the jurisdiction of the justice of the peace being limited to cases between landlord and tenant where the rental value of the property did not exceed $25 per month, it was held that when the evidence showed that the monthly rental value was in excess of that amount, the judgment rendered by the justice was coram non judice and void.

In Hoban v. Ryan, 130 Cal. 98, 62 Pac, 296, the court said: "The question of jurisdiction must therefore depend upon the

construction of the language used in the constitutional provision cited, which is 'that said justices shall have jurisdiction in cases of forcible entry and detainer, where the rental value does not exceed twenty-five dollars per month *and where the whole amount of damages claimed does not exceed two hundred dollars.*' Or, rather, the question depends upon the construction of the clause italicized, and especially on the definition of the word 'damages.' If this term be construed as including the whole amount sued for—that is to say, not merely the alleged value of the use and occupation, but the amount to be adjudged, then the case was beyond the jurisdiction of the justice's court. But the meaning of the term is well settled. 'Damages [are] the indemnity recoverable by a person who has sustained an injury. * * * The sum claimed as such indemnity by a plaintiff in his declaration'; and the term includes not only 'compensatory,' but also 'exemplary' or 'punitive' or 'vindictive' and 'double or treble damages.' (Bouvier's Law Dictionary, word 'Damages.') * * * There can be no doubt, therefore, that the term 'damages' includes the whole amount to be adjudged, and that it is so used here is indicated by the peculiar form of expression, viz., 'the whole amount of damages claimed,' which would lack force if compensatory damages only were intended. It may be added that the technical is quite in accord with the popular meaning of the term. Hence, naturally enough, the prayer of the complaint is for treble the amount, 'as damages for the unlawful detention.' Nor is it reasonable to assign to the convention the intent to give to justices' courts in this particular case jurisdiction to an amount double the amount of $300, by which their ordinary jurisdiction is determined."

In *Giddens* v. *Bolling*, 92 Ala. 590, 9 South. 275, the court said: "In an action for unlawful detainer the recovery of rent is a mere incident to the recovery of possession of the land. If the amount of rent exceeds the amount of jurisdiction of the justice's court, unless the plaintiff is willing and does release all in excess of the justice's jurisdiction, the rent can only be recovered in a separate action, in a court having jurisdiction of the amount."

In his brief in this court respondent has offered to remit

part of the judgment for the rent, if we took the view that it was excessive. It is not unusual to direct the modification or reduction of judgments by us on appeal, but this case is before us only on appeal from an order dismissing a writ of *certiorari* or review. We can act only on the theory that the judgment in the case is in excess of that which the justice has the power to render, and is void because beyond his jurisdiction. It is different than if the respondent had offered to remit the excess in the justice's court, and not to take judgment there in an amount exceeding $300. It was held in *Roy* v. *Whitford*, 9 Nev. 371, that a judgment rendered by a justice of the peace, in a case in which he had acquired no jurisdiction, was void, and that it would be annulled on *certiorari*. In *Wilson* v. *Morse*, 25 Nev. 376, it was said: "By the statute of this state upon the subject of *certiorari*, we are restricted to the consideration of the question of the jurisdiction of the court only." (*Pratt* v. *Stone*, 25 Nev. 373.)

The contention of respondent that *certiorari* will not lie to annul the judgment because the defendant in the justice's court had the right of appeal, we are convinced, from a more extended examination, is without merit, and that this case is distinguishable in principle from the case of *Chapman* v. *Justice Court*, 29 Nev. 154, upon authority of which we heretofore ordered this appeal dismissed. In the Chapman case, *supra*, the justice of the peace had jurisdiction of the person and of the offense with which he was charged. His want of jurisdiction was based solely upon the alleged unconstitutionality of the act, under the provisions of which the prosecution was being instituted. We held in that case that the justice had the right to pass upon the constitutional question. Acts of the legislature are presumed to be constitutional until declared void by a court of competent authority. (*State* v. *Commissioners*, 21 Nev. 238; *Evans* v. *Job*, 8 Nev. 322.) Upon its face the judgment in the Chapman case was regular and within the jurisdiction of the court. An appeal from this judgment would have given the defendant a trial *de novo*, and an opportunity to have had the constitutionality of the act determined as well. In other words, his remedy by appeal was full and complete, and hence *certiorari* would not lie.

The prayer for judgment in the complaint of respondent
herein in the justice's court was in the following language:
"Wherefore plaintiff prays judgment against defendants for
the restitution of said premises and for damages, to wit, the
reasonable value of the use and occupation of said premises
from March 15, 1908, to the date of judgment herein, and
that said damages be trebled, and for costs of suit." As before
stated, the value of the use and occupation of the premises
was alleged to be $175 per month. The motion for judgment
on the pleadings was interposed April 25, 1908, and judgment
rendered the 28th following. The demand and motion for
judgment, read in view of the situation on both these dates,
was for an amount in excess of the jurisdiction of the justice's
court. There was no offer to relinquish any portion of the
judgment prayed for before presenting the motion for judg-
ment on the pleadings.

It may be seriously questioned whether, in the absence of a
supplemental complaint, a plaintiff is entitled, in any event,
to recover rent accruing after the institution of the suit. But
in this case both counsel for the plaintiff and the justice pro-
ceeded upon the theory that the pleadings warranted a judg-
ment for treble the amount of rent accruing between the 15th
day of March and the 25th or 28th day of April following.
As the justice of the peace was, at the time, without jurisdic-
tion to enter judgment in excess of $300, the judgment entered
in the action was void upon its face, and was for an amount
within the original jurisdiction of the district court only. The
following decisions of this court, we think, support the conclu-
sion that an appeal from a judgment of a justice of the peace
in a case in which it is without jurisdiction will not confer
jurisdiction on the district court, in which the appellate juris-
diction is the same as the original jurisdiction in the justice's
court, and that in the absence of the right of appeal, the void
and excessive judgment will be annulled on *certiorari*. (*Peacock
v. Leonard*, 8 Nev. 84; *Roy* v. *Whitford*, 9 Nev. 370; *Martin* v.
*District Court*, 13 Nev. 85; *Wiggins* v. *Henderson*, 22 Nev. 103;
*Forsyth* v. *Chambers*, 30 Nev. 337.)

The order of the district court dismissing the writ will
be vacated, and the district court is instructed to enter an

order directing the annulment of the judgment of the justice's court.