# THE SUPREME COURT

OF

# OREGON.

## MARCH TERM, 1890.

[ Filed March 16, 1887. ]

\* C. W. SANFORD, RESPONDENT, *v.* H. W. SANFORD, APPELLANT.

PUBLIC LANDS—PATENT—COLLATERAL AND DIRECT ATTACK.—In an action of eject-ment, a patent for land granted by the United States cannot be collaterally attacked; but it may be attacked by a direct proceeding in equity, based on mis-take of the law in its issuance or fraud and imposition in its procurement.

SAME—FRAUD—TRUSTS—INJUNCTION.—Under this rule, where it appeared that after A and B had filed upon separate adjoining tracts of land, A, without the knowl-edge of B, had his entry amended so as to cover both tracts, notwithstanding B was and had been rightfully in possession of the tract entered by him, and by such means A fraudulently obtained a patent for B's tract; *held,* that A would be con-sidered a trustee of the legal title for B as to such tract, and that an action of eject-ment to recover such tract brought by A against B would be enjoined.

APPEAL from the circuit court for Coos county.

*A. M. Crawford* and *J. F. Watson,* for Appellant.

*S. H. Hazard,* for Respondent.

LORD, C. J., delivered the opinion of the court.

This is a suit begun by cross-bill to enjoin an action of ejectment brought by defendant, and to have him declared a trustee of the legal title of certain lands described therein. The defendant is the holder of a patent of the

---

\* Omitted from previous volumes by mistake.—[REPORTER.

United States to said lands under the preëmption laws; and the object of the present suit is to charge him as trustee of said property, and to compel a conveyance to the plaintiff. It may be admitted that the facts are not stated in the complaint with much conciseness or precision; but we think they are sufficient as alleged, if proved, to entitle the plaintiff to the relief for which he prays. There can be no doubt but that it is the duty of the officers of the land department to determine upon the facts to whom patents shall be issued for the public lands. The law has intrusted them with the performance of this duty, and, when done, all reasonable presumption must be indulged in support of their action. As to all matters of fact within the scope of their authority, their findings must be taken as conclusive in the absence of fraud and imposition. This doctrine has been expressly affirmed by the highest judicial tribunal of the country. *Johnson* v. *Tewsley*, 13 Wal. 72; *Moore* v. *Robbins*, 96 U. S. 530; *Smelting Co.* v. *Kemp*, 104 U. S. 636.

Hence a patent cannot be collaterally attacked but only by a direct proceeding in equity, based on mistake of the law in its issuance or fraud and imposition in its procurement. "If the officers of the law," said Mr. Justice Field, "mistake the law applicable to the facts or misconstrue the statutes and issue a patent to one not entitled to it, the party wronged can resort to a court of equity to correct the mistake and compel the transfer of the legal title to him as the true owner. The court in such case merely directs that to be done which these officers would have done if no error of law had been committed. The court does not interfere with the title of a patentee when the alleged mistake relates to a matter of fact, concerning which these officers may have drawn wrong conclusions. A judicial inquiry as to the correctness of such conclusion would encroach upon a jurisdiction which congress has devolved exclusively upon the department. It is only when fraud and imposition have prevented the unsuccessful party in a contest from fully presenting his case or the

officers from fully construing it, that a court will look into
the evidence. It is not enough, however, that fraud and
imposition have been practiced upon the department, or
that false testimony or fraudulent documents have been
presented. It must appear that they affected its determi-
nation, which otherwise would have been in favor of the
plaintiff. He must in all cases show that but for the error
or fraud or imposition of which he complains he would
have been entitled to the patent. It is not enough to show
that it should not have been issued to the patentee. It is
for the party whose rights are alleged to have been disre-
garded that relief is sought, not for government, which
can file its own bills when it desires the cancellation of a
patent unadvisedly or wrongly issued." *Bohall* v. *Dilla,*
114 U. S. 47, 5 Sup. Ct. Rep. 782; *Sparks* v. *Pierce,* 115 U. S.
408, 6 Sup. Ct. Rep. 102.

The application of these principles to the facts in hard
are decisive of this case. At the outset it may be said it
is clear from the evidence that the defendant has not
at any time resided upon or cultivated or improved the
land in dispute, or any part thereof. But this of itself is
not enough to serve the purpose of the plaintiff. It only
shows that the defendant is not entitled to a patent. The
law requires the plaintiff to go further and show such
a compliance with the law that, but for fraud or impo-
sition of the plaintiff, he would be entitled to and awarded
the patent for these lands. In 1871, the defendant, who is
a brother of the plaintiff, had settled upon a certain parcel
of unsurveyed public lands as a preëmption claim. Adjoin
ing his claim there were other such public lands. With a
view to secure it for his brother, who then resided in Cali-
fornia, he put in possession of it a friend to temporarily
hold it until he could notify his brother and ascertain
whether he desired to make a settlement upon it as a
preëmption claim. Under this state of facts he wrote to
the plaintiff and requested him to come to Oregon and set-
tle upon the adjoining claim. In response to that invita-
tion the plaintiff came for the purpose of settlement upon

the land, and the defendant pointed it out to him and helped him to build his cabin upon it in furtherance of his settlement.   They thus resided upon adjoining claims for several years, the defendant all the while recognizing the settlement of the plaintiff, who, in the meantime, had made improvements, all of which were located on the forty acres now in dispute.

In 1879 the lands settled upon by these parties were surveyed and the plat thereof filed in the land office at Roseburg, when it became known that the tract of land in dispute belonged to that portion of the land settled upon by plaintiff under the circumstances indicated.   On September 9th and 27th, respectively, of that year the plaintiff and defendant filed their declaratory statements to the parcels of land upon which they had settled.   More than a year afterwards the defendant amended his declaratory statements so as to include the tract in dispute and upon which the plaintiff had resided for quite a number of years, and had built his house and barn and out-houses, set out an orchard, and made other improvements.   The evidence shows and the court below finds that this was procured upon the *ex parte* affidavits of the defendant and two witnesses, and without any notice to the plaintiff of the proceeding.   It is beyond dispute at this time and when these affidavits were made that the plaintiff was then and had been during the time before mentioned residing upon and improving the identical lands included in this amended statement.   By this means the defendant was enabled to procure the patent in fraud of the rights of the plaintiff. And it is clear from the evidence but for such fraud and imposition he would not only have been entitled to but have been awarded the patent.

We have not undertaken to refer to all of the facts in detail.   We are satisfied that the decree must be affirmed.