[No. 1847]

## TONOPAH AND GOLDFIELD RAILROAD COMPANY, A CORPORATION, RESPONDENT, *v.* JOHN DOE FELLAN-BAUM, P. D. PAYNE, J. H. ALEXANDER, AND JAMES COE, APPELLANTS.

1. PUBLIC LANDS—PATENTS—CONCLUSIVENESS.

Though the action of the land office in issuing a patent to public land be considered as conclusive as the judgment of a judicial tribunal, it may be overthrown where the circumstances under which it was issued indicate a lack of jurisdiction of the subject-matter or of the person whose rights are involved, which would render a judgment void; and hence a patent issued under the act of Congress of June 4, 1897 (30 Stats. 36, c. 2), providing that, where a tract covered by a patent is included in a public forest reservation, the owner, if he desires, may relinquish the tract to the government, and select in lieu thereof a tract of vacant land open to settlement, in a proceeding in which persons having prior possession of the land granted at the time of the application for the patent are not made parties or given notice, is not conclusive; the land office in such case having had no jurisdiction over the parties in possession.

2. PUBLIC LANDS—PATENTS—REQUISITES AND VALIDITY.

The acts of Congress control the force of patents, which cannot be varied in their effect by the omission from them of statutory provisions, or the insertion of other or different ones.

3. EVIDENCE—PRESUMPTIONS—CONTINUANCE OF CONDITION.

A condition shown to exist at a particular time is presumed to continue thereafter, but there is no presumption that it had continued for any length of time previously; and hence from evidence that adverse claimants were in possession of land when patented by others, and six months previously thereto, no presumption could arise that claimants were not in possession at the time application for the patent was made.

4. PUBLIC LANDS—PATENT TO LAND REGULAR ON ITS FACE—PRESUMPTIONS.

A patent issued without notice under the act of Congress of June 4, 1897 (30 Stats. 36, c. 2), providing that, where land covered by a patent is included in a public forest reservation, the owner may relinquish the tract and select in lieu thereof vacant land open to settlement, regular on its face when introduced in evidence, only raises a presumption that the government had conveyed the land to the patentee, and that the land was vacant when the patent was issued, the presumption being rebuttable by proof that the land was in the possession of adverse claimants at the time of and for six months prior to the date of the patent.

5. PUBLIC LANDS—SELECTION AND APPLICATION—EVIDENCE.

A power of attorney by an applicant for public lands reciting that applicant had surrendered to the government certain land by which it became entitled to select other land in lieu thereof, that it had constituted a certain person its attorney to enter and take possession of such land selected by it, was no proof, and raised no presumption,

that a selection of, or application for, land described in the patent subsequently issued to it was made, nor that proof of the character of the land patented was made to or accepted by the land office.

6. EJECTMENT—BURDEN OF PROOF—OWNERSHIP OF LAND.

Where plaintiff sues to recover land alleged to belong to it, under patent from the United States, and claimed by defendants who deny any rights of plaintiff under the patent, the burden is upon plaintiff to prove its ownership, and it is not incumbent on defendants to establish a negative.

7. PUBLIC LANDS—PATENT TO VACANT LANDS.

If public land was vacant when a patent thereto under a statute allowing the patenting of vacant land would take effect by relation, it would establish a complete title in the patentee, though the patentee did not have possession of the land prior to possession of others before issuance of the patent.

8. COSTS—NECESSITY OF DEMAND BEFORE SUIT.

In an action to recover possession of land claimed by plaintiff under patent from the United States, if defendants were in rightful possession previous to the patent, and were not given notice of the application for the patent and claimed no right as against the patent, a demand upon them for possession would be necessary before judgment could be recovered against them for costs.

9. NEW TRIAL—APPEAL AND ERROR—REVIEW—NONSUIT.

A question presented on motion for nonsuit is a question of law depending upon whether there is any evidence to support a judgment for plaintiff, and may be reviewed either on motion for new trial or on appeal from the judgment.

NORCROSS, C. J., dissenting.

APPEAL from the District Court of the Seventh Judicial District of the State of Nevada, Esmeralda County; *Theron Stevens,* Judge.

Action by the Tonopah and Goldfield Railroad Company against John Doe Fellanbaum and others. Judgment for plaintiff, and defendants appeal. **Reversed and remanded for new trial.** On petition for rehearing. **Granted.**

The facts sufficiently appear in the opinion.

*James Donovan,* for Appellants:

I. The court erred, as set forth in specification No. 6, in sustaining the objection to the following question: "Do you know whether there were any other people living or residing upon this ground during the period of time that you have described as six months prior to August 15, 1907?" This question was pertinent to show, not only that the defendants

were residing upon the land prior to the 15th of August, 1907, but that a great number of people were residing there; the purpose being to show that at the time the forest reserve scrip was laid on this land that it was fraudulently laid, because affidavits had to be filed showing the land to be vacant, and if it was not vacant, then no scrip could be placed upon it.

II. *Specification No. 8.* Before calling the attention of the court to this specification we desire to state that the only evidence offered on the trial on behalf of the plaintiff was the five exhibits; then the plaintiff called three witnesses to show that the defendants were on the land described in the plaintiff's complaint. Then the plaintiff rested. This was all the evidence there was offered on the part of the plaintiff, and the eighth specification of error shows that the court erred in holding that it was only necessary for the plaintiff to recover in ejectment to prove, first, that the plaintiff had the legal title; second, that the defendants were in possession of the land when the plaintiff acquired legal title, and that was sufficient to maintain a suit in ejectment. The court erred in this, that it could be true that the plaintiff could have the legal title and the defendants could be in possession when the plaintiff acquired the legal title, and still no right of action could exist in ejectment against the defendants, because the presumption of law is that the defendants were rightfully in possession until the contrary affirmatively appeared. The defendants were in possession prior to the time the plaintiff acquired title, and the presumption must be that they were rightfully in possession, and, if the defendants were rightfully in possession, then the fact that the plaintiff acquired title while the defendants were in rightful possession would not give the plaintiff a right of action in ejectment against the defendants, unless the plaintiff first made the demand on the defendants for possession and the defendants refused to deliver up possession. These facts must be alleged and proved, or the plaintiff must prove that the defendants were trespassers against the plaintiff's grantors and were trespassers against the plaintiff. None of these facts appeared; the only facts proven were, first, title in plaintiff; second, that they acquired their title on August 15, 1907; third, that the defendants were in possession of the land

when the plaintiff acquired title. Upon these facts proven there is no wrongdoing on the part of the defendants whatever. The plaintiff should have gone further and have shown that the defendants were trespassers against the plaintiff's grantors; or plaintiff should have made a demand upon the defendants to vacate and, after the demand made, a refusal on the part of the defendants to vacate; then it would have proven a *prima facie* case, but we respectfully submit that in this instance there was a total failure of proof on the part of the plaintiff to establish a *prima facie* case.

III.    It will be seen from an examination of the record that the defendants in this case were lawfully in possession of the land mentioned in the plaintiff's complaint long prior to the 15th day of August, 1907; that whatever rights the plaintiff had were acquired on the 15th day of August, 1907, at which time the defendants were in peaceable possession of the property in controversy, and upon the evidence of the plaintiff it was the duty of the trial court to have granted defendants' motion for nonsuit, because, first, there was absolutely no evidence to show that the defendants were not in lawful possession of the property in controversy when the plaintiff acquired title; the mere fact that the plaintiff acquired title on the 15th day of August, 1907, if they ever did acquire title, and the fact that the defendants were in possession of the property at the time the plaintiff acquired the title, would not, under any conception of the law, entitle the plaintiff to recover. The plaintiff alleged an ouster and an unlawful withholding, neither of which facts did the plaintiff offer any evidence to establish.

*Campbell, Metson & Brown*, and *Huger Wilkinson*, for Respondent:

I.    In accordance with the request of Mr. Justice Sweeney, during the course of the oral argument herein, to submit authorities upon the proposition that proof of legal title in actions to recover the possession of land, without contradicting proof, raises the presumption that the person holding the legal title is entitled to the immediate possession of the land, and that evidence other than proof of title is not necessary to

establish plaintiff's right to immediate possession when no evidence has been introduced by defendant, we beg leave to submit the following authorities in support of that proposition: "If plaintiff is shown to have the legal title he is presumed to have the right of possession until a better right is shown." (15 Cyc. 128.) As a leading case among a large number supporting this proposition, we have selected *McCarthy* v. *Brown*, 113 Cal. 15; 45 Pac. 14. In the latter portion of the opinion, after discussing the instruments of title introduced in evidence, the court says: "These disclose title in the plaintiff carrying with it the right to possession." In *Payne* v. *Treadwell*, 16 Cal. 243, the court, by Justice Field, said: "The right to the possession follows as a conclusion of law from the seizin and need not be alleged.  *  *  *  The right of possession accompanies the ownership, and from the allegation of fact of ownership—which is the allegation of seizin in the 'ordinary language'—the right of present possession is presumed as a matter of law.  *  *  *  The withholding of the possession from one who is seized of the premises is presumptively adverse to his, and wrongful. See, also, *Haight* v. *Green*, 19 Cal. 118; *Salmon* v. *Symonds*, 24 Cal. 266; *Depuy* v. *Williams*, 26 Cal. 314.

II.  Since the evidence shows clearly the title in plaintiff and the withholding of possession by defendants at the beginning of this suit, and for a long time prior thereto, and also at the time of the trial herein, the only question raised in the oral argument was the fact that no evidence was introduced to show that defendants' possession might not have been for some reason or other, not disclosed by the record, wrongful or unlawful. In view of the authorities above citied, and the practically unanimous decision of all the courts in support of this authority, we contend that it was wholly unnecessary to introduce evidence showing that plaintiff had not parted with its right of present or immediate possession since "possession follows the title," and the law presumes the owner to be entitled to the immediate possession until such presumption has been removed by evidence on the part of defendant. This presumption relieved the plaintiff in this case and cast the

burden of proof upon defendants, who failed to introduce any evidence at the trial.

III.   We desire to deal a little more at length with the ninth specification of error.   The point assigned there is that the court erred in denying defendants' motion for a nonsuit. The state of the record on appeal precludes a consideration of this point.   The error there assigned requires this court to review the evidence adduced at the trial in the court below, and determine whether or not it sustains the allegations of the complaint.   In other words, this court is requested to determine whether or not sufficient evidence was adduced to justify the court in making the findings of fact necessary to support a judgment.   That the sufficiency of the evidence to support findings of fact, verdict or other decision of fact can be considered by the supreme court only upon a statement on motion for a new trial, after an appeal from an order granting or overruling a motion for a new trial, is the uniform and undisputed law of this state, cannot be doubted.   Our own state reports are full of such decisions.   We deem it sufficient to cite: *State* v. *Sadler*, 21 Nev. 13, 19; *Burbank* v. *Rivers*, 20 Nev. 81.   Another fatal objection to the consideration of this specification of error is the fact that even the findings themselves, in this cause, are not made a part of the record herein.

IV.   A review of the record will reveal the fact that the only record before this court for review is the judgment roll and the statement on appeal.   The statement on appeal contains the evidence and sets out certain alleged errors of law occurring at the trial, relative to the admission or rejection of evidence.   The findings of fact and conclusions of law are not contained in the record, and therefore cannot be considered on this appeal.   Neither can the sufficiency of evidence to support any set of findings, whatever they may have been in this cause, be considered, for the reasons heretofore stated.   The only questions, then, that can be determined on appeal are: First, whether the plaintiff states facts sufficient to constitute a cause of action, and the judgment rendered conforms to the allegations of the complaint; this point is determined by an

inspection of the judgment roll; and, second, the only point properly brought before this court for review by the statement on appeal is whether or not errors were committed by the trial court in its rulings relative to the introduction of evidence. This point has been fully discussed in a former part of this brief and, we trust, to the satisfaction of the court.

*James Donovan*, for Appellants, on supplemental brief:

I.   The evidence of the plaintiff in this case showed that the defendants had been in possession of this land for many months prior to the plaintiff acquiring title; that being shown by the plaintiff's witnesses, the legal presumption would follow that the possession of the defendants was rightful and not tortuous, and this presumption would continue until it was overcome by evidence.   That this rule of law is correct is sustained by the complaint, where the plaintiff alleges "that while plaintiff was such owner and so seized in fee, and in the peaceable possession and entitled to the possession of said lands and premises, said defendant did on or about the 15th day of August, 1907, wrongfully and unlawfully, and without right or title, enter into and upon said premises above described, and did then and there oust and eject plaintiff from the premises and the whole thereof." The exhibits in this case will show that the plaintiff acquired title, if at all, on the 14th or 15th day of August, 1907.   In order to maintain their suit they must allege that after they had the title the defendants entered and ousted the plaintiff, but the evidence is at variance with this allegation in that the evidence clearly shows that the defendants were in possession of this land long prior to the 15th day of August, 1907, when the plaintiff acquired its title.   The fact being established, then there is a fatal variance between the allegations of the complaint and the evidence offered.   There is nowhere any evidence offered to show that the plaintiff's grantors were ever in possession of this land; there is no evidence anywhere to show that, at the time the defendants entered this land, the plaintiff, or its grantors, had any title to the land.   Then the status of the case must stand as follows: First, the defendants having acquired their possession prior to any title in the

plaintiff or its grantors, and there being no evidence to show that the plaintiff or its grantors were in possession, then the presumption of law is that the possession of the defendants was lawful until the contrary is clearly established by evidence. Section 233 of Warvelle on Ejectment, reads as follows: "In an action to recover the possession of land, the burden of establishing his title and right of possession by affirmative proof is cast upon the claimants. If he claims by purchase he must connect himself by deed or will with the prior owner and show by proper proof the validity of such deed or will, and the seizin of his grantor or advisor. As against a defendant, who is a stranger to the party from whom the plaintiff derives title, it would seem that the latter makes a *prima facie* case by showing the possession of his grantors at the time the deed was delivered, or that his ancestor died in possession of the land in question." From the foregoing it will be seen that the plaintiffs did not bring themselves within the requirements of this rule.

II. In conclusion, we maintain that before the plaintiff could recover in this action he would have to show in his complaint: First, that he was the owner in fee; second, that he was entitled to the possession; third, that while he was in possession and entitled to the possession the defendant entered and ousted him. The facts that were established by the evidence are the following, leaving out the question of title: The second fact that was established was that the defendants were in possession of the land in controversy several months prior to the time that the plaintiff acquired conveyance to this land, and were in possession at the time the plaintiff acquired title to the land, if it ever did acquire title. No evidence was offered to show that the possession of the defendants was hostile or adverse to the title of the plaintiff's grantors. No evidence was offered to show that the plaintiff's grantors were ever in possession of the land in controversy, or that the plaintiff ever was in possession of the land in controversy prior to the time that the defendants acquired possession. Such being the facts, the presumptions of law are that the defendants were in the rightful possession of the land, and no notice ever having been given to them to deliver possession to

the plaintiff, the rightful possession of the defendants never was determined. For the foregoing reasons we submit that the position maintained by the plaintiff and respondent, that the presumption of the right of possession follows the title, does not apply in this case, and only applies when it is shown that, at the time the defendant entered, the plaintiff was entitled to the possession and in the possession.

III.    As bearing upon the admissibility of the forest reserve scrip entry, see 27 Pac. 784.

By the Court, TALBOT, J.:

Respondent brought this action to recover, and alleged that it was the owner in fee and entitled to the immediate possession of certain pieces or lots of land at the town of Miller, in Esmeralda County, situate in the NE¼ of SW¼, Section 11, Township 3 N., Range 40 E., M. D. M. The answer denied that the respondent owned the land, and denied that the appellants wrongfully or unlawfully withheld the possession, and alleged: " (1) That long prior to August 15, 1907 (the date alleged in the complaint as the time when respondent became seized in fee and entitled to the immediate possession of the land in controversy), the defendants and their grantors located on certain lands at Miller, Esmeralda County, Nevada, which said lands are described in paragraph 2 of plaintiff's complaint, but that at the date of said settlement by the said defendants and their grantors said land so described as aforesaid was vacant, unoccupied and unappropriated public domain belonging to the United States of America, and that at the date of the location of the defendants and their grantors there were no improvements upon said land whatever, and no one asserted or claimed any right, title or interest in or to the said lands adverse to the defendants herein. (2) That at all the times mentioned in the plaintiff's complaint said land described as aforesaid was vacant government land belonging to the United States, and is at the present time the property of the United States, and that the plaintiff has no title, claim or interest in or to said land, either in the fee thereof or in the possession thereof."

Upon the trial the respondent introduced in evidence, over

the objections of the appellants, a record copy of a patent from the United States to the Aztec Land and Cattle Company, Limited, to the E½ of the NW¼ of Section 11, above mentioned, granted in lieu of certain lands relinquished to the United States on what is commonly called "scrip," and deeds conveying to the respondent any rights granted by this patent.    The patent recited that: "Whereas, the Aztec Land and Cattle Company, Limited, being the owner of a tract of land situated and included within the limits of the public forest reservation, and known and officially designated as the San Francisco Mountain Forest Reserve in Arizona, has under the provisions of the act approved June 4, 1897 [designating the title], reconveyed and relinquished the said tract to the United States, and has, under the provisions of said act selected in lieu thereof the following described tract of vacant public land now open to settlement," and then follows a description and the purported grant of the eighty acres. The respondent placed witnesses upon the stand, who stated that the appellants were in possession of the lots or tracts of land for which this action is brought, and who also testified on cross-examination that the appellants and their grantors were in possession long before the date of the patent.    Such possession by appellants prior to the date of the patent was admitted by respondent's counsel on the hearing in this court. From an order overruling a motion for a nonsuit, and from a judgment in favor of the respondent, the appellants have appealed.

The important question involved is whether under the facts related this patent comes within, or is an exception to, the general rule that a patent is conclusive, and cannot be attacked collaterally.    Can the appellants rely and prevail upon a possession in themselves running from a time prior to the issuance of the patent?    The act of Congress mentioned in the patent as the one under which this land was selected and patented (Act of June 4, 1897, c. 2, 30 Stats. 36) provides: "That, in cases in which a tract covered by * * * a patent is included within the limits of a public forest reservation, the settler or owner thereof may, if he desires to do so, relinquish the tract to the government, and may select in lieu thereof a

tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent; and no charge shall be made in such cases for making the entry of record or issuing the patent to cover the tract selected." The conclusiveness of patents stands upon the theory that, when they have been properly issued within the jurisdiction of the land office, they are effective and immune from collateral attack, the same as are the judgments of courts. If the action of the land office in issuing the patent be considered as conclusive as the judgment of any judicial tribunal, there is still good reason for holding that the patent may be overthrown when the circumstances under which it was issued were such as to indicate a lack of jurisdiction of the subject-matter or of the person whose rights are involved which would render a judgment void. (*Wright* v. *Roseberry*, 121 U. S. 519, 7 Sup. Ct. 985, 30 L. Ed. 1039, quoting *Smelting Co.* v. *Kemp*, 104 U. S. 641, 26 L. Ed. 875.)

If the respondents were in possession at the time the application was made for the patent, such prior possession constituted property, and under well-recognized legal principles gave them a right to the land and to their buildings or improvements, and the land was not subject to entry by another under the acts of Congress, as held in numerous cases, including *Reinhart* v. *Bradshaw*, 19 Nev. 257 (3 Am. St. Rep. 886), from which we quote: "In *Nickals* v. *Winn*, 17 Nev. 188, the plaintiff was in the possession of a large tract of public land. He neglected to avail himself of his right to purchase in preference to others, and Winn, taking advantage of the situation, undertook to purchase 160 acres thereof from the government. It was held upon the authority of *Atherton* v. *Fowler*, 96 U. S. 513, 24 L. Ed. 732, and under decisions referred to in the opinion, that the right of preemption could not be exercised upon land occupied by another. 'The generosity by which Congress gave the settler the right of preemption,' said the court in that case, 'was not intended to give him the benefit of another man's labor, and authorize him to turn that man and his family out of his home. It did not propose to give its bounty to settlements obtained by violence at the expense of others. The right to make a set-

tlement was to be exercised upon unsettled land—to make improvements on unimproved land.' " (*Brown* v. *Killabrew*, 21 Nev. 437.) In *Fitchett* v. *Henley*, 31 Nev. 326, we said: "Large interests in the western states carrying farms, mills, and town property are often held merely by possession." In *Bonner* v. *Meikle* (C. C.), 82 Fed. 969, it was held that occupants of lots on the public domain in the town of Delamar who had built on and improved the same had a possessory right which entitled them to contest the issuance of a patent to the claimant of a prior mining location, and that they would be protected in this right, although no steps had been taken by them or the authorities of the town to secure title to themselves.

This property interest and possessory right is of such magnitude that the appellants ought not to be deprived of it under the ordinary constitutional guaranties, state and federal, in a proceeding either before the land office or a court, to which they were not parties and in which they were not given notice or an opportunity to be heard. Otherwise there could be deprivation of rights by the land office in an *ex parte* proceeding without due process of law, thereby setting aside constitutional guaranties which the decisions universally hold must be respected by the courts, and resulting in the loss of the settler's possession and improvements by fraud or mistake, when neither the land office nor a judicial tribunal would strip him of his holdings if he were given an opportunity to appear and prove that he had prior possession. If it be claimed or admitted that the settler has no rights as against the United States, and that the government may confiscate his buildings and appurtenances on the public domain, it may be said in reply that the making of laws and the disposition of the public lands lie with Congress and not with the land office, except as it acts in pursuance of federal statutes, and that Congress has been careful in the different acts which authorize the patenting of unoccupied public lands to protect claimants holding prior possession by providing for notice and giving them a preference to purchase from the government; that, at least until there is confiscatory legislation warranting it, the possession and improvements of the

settler on the public domain are property of which he is not
to be deprived without notice, an opportunity to defend, or
due process of law; that, if the appellants were in possession
at the time the application was made for the patent, the land
office was not authorized to issue it without notice, because
the statute under which the patent was granted only allowed
the issuance of a patent for vacant land, indicating that it was
not the intention of Congress to allow patents to be issued on
scrip which would deprive settlers of their prior possession.

This is in keeping with the uniform course of federal
legislation and judicial decisions, which have recognized and
guarded the prior possessors of land on the public domain and
protected them against the intruder on their holdings. If the
land office had any jurisdiction as to the subject-matter over
land which was in the possession of the appellants under an
act of Congress which only authorized the issuance of a patent
for vacant land, and was misinformed by petition or affidavit
and concluded that the land was vacant when in fact it was
in the possession of the appellants, they ought not to be
deprived of their rights by a wrong finding in a proceeding to
which they were not parties. The acts of Congress control
and their provisions govern the force of patents, which
cannot be varied in their effect by the omission from them
of statutory provisions or the insertion of other or different
ones.

The act authorizing the issuance of the scrip on which this
patent was obtained does not provide for any notice to adverse
claimants by personal service, by posting on the ground, by
publication, nor in any other way, and does not attempt to
empower the land office to prescribe notice. It is not shown
that the appellants had any constructive or other notice which
would have enabled them to assert their claims before the
land office. Although courts take judicial notice of the rules
of the general land office, it does not appear that there was
any rule requiring the service, posting, or publication of
notices in cases of this character at the time the patent was
issued. If Congress attempted to confer authority on the land
office to make such a rule, the question would still arise as to
whether this is not, as distinguished from formal and ordinary

routine office matters which may be regulated by executive departments, a legislative power which can be exercised by Congress only, and which cannot be delegated so as to enable the land office to legislate or prescribe the time and conditions of notices which if not answered would deprive the citizen of his property by a proceeding to which he was not a party.

In *United States* v. *Eaton*, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591, the court stated: "It was said by this court in *Morrill* v. *Jones*, 106 U. S. 466, 467, 1 Sup. Ct. 423, 27 L. Ed. 267, 268, that the secretary of the treasury cannot by his regulations alter or amend a revenue law, and that all he can do is to regulate the mode of proceeding to carry into effect what Congress has enacted. Accordingly it was held in that case, under section 2509 of the Revised Statutes, which provided that live animals specially imported for breeding purposes from beyond the seas should be admitted free of duty, upon proof thereof satisfactory to the secretary of the treasury and under such regulations as he might prescribe, that he had no authority to prescribe a regulation requiring that, before admitting the animals free, the collector should be satisfied that they were of superior stock, adapted to improving the breed in the United States.   *   *   *   It would be a very dangerous principle to hold that a thing prescribed by the commissioner of internal revenue, as a needful regulation under the oleomargarine act, for carrying it into effect, could be considered as a thing 'required by law' in the carrying on or conducting of the business of a wholesale dealer in oleomargarine, in such manner as to become a criminal offense.   *   *   *"

It is evident that the land office, proceeding under the act of Congress authorizing the granting of vacant land only, would not issue a patent for land occupied by appellants or others, unless misled by mistake, misrepresentation, or fraud, and that no patent would have been issued if the statute had provided for a proper notice, and such notice had been given, enabling the appellants to defend and they had appeared and showed that they were in possession, which they now seek to do after service of summons. Hence if the patent is now held to be conclusive, and consequently the appellants are to be dispossessed, the result attained will deprive them of their

property, which was not intended by the land office nor contemplated by the acts of Congress.

In other cases Congress has provided for reasonable notice which gives adverse claimants an opportunity to establish their rights before the land office. The applicant for a mining patent must have the ground surveyed and staked and notice posted on the claim and published in a newspaper for sixty days. The homestead applicant is required to give notice and bring witnesses to prove that he has resided on the land for the required length of time. It would seem that the statute which controls in this case was drawn on the theory that only vacant land could be patented in lieu of tracts surrendered on forest reservations, and that, as it applied only to vacant land, there was no one to notify. But, if it transpires that the land patented was not vacant, the persons having possession and improvements there ought not to be deprived of their rights without notice to them in compliance with some proper act of Congress. To adjudicate otherwise would open the door for deception in the land office, and allow speculators and unscrupulous persons clandestinely and by fraud, misrepresentation, or mistake to obtain patents without notice, and deprive the owners of agricultural and other valuable lands and the people of whole towns and communities of their lots, dwellings, business houses, and other hard-earned holdings on the public domain. For the court to dispossess the prior occupants of their homes and property under these circumstances, and allow them no protection except to request the attorney-general of the United States to institute suit to set aside the patent, which might be defended in the courts for years, while they were kept out of possession, would be poor relief and a palpable denial of justice. It would be different if the act of Congress had provided for and the appellants had been given proper notice and an opportunity in the land office to show a prior possession which might have protected them there and prevented the issuance of the patent or made it conclusive if they failed to appear, or if Congress in its control of the public domain had intended by any legislation to strip the settler of his prior possession and improvements without notice.

That the patent under which the respondent claims was issued in a merely *ex parte* proceeding is exemplified by the following excerpt from the decision of the secretary of the interior in *Gray Eagle Oil Co.* v. *Clarke*, 30 Land Dec. Dep. Int. 570: "The act of 1897 describes the land which may be selected under its provisions as 'vacant land open to settlement.' To be vacant, land must be unoccupied. To be open to settlement, land must, among other things, not be known to contain valuable mineral deposits. Land which is occupied by another or which is known to contain valuable mineral deposits is therefore not subject to selection under said act. It is a general rule that applicants for the public land must show that the land applied for is of the character contemplated by the law under which it is sought.  *  *  *  As has been said in various decisions of the department, this law constitutes a standing offer on the part of the government for an exchange of lands. In this offer the lands to be exchanged are described. Those to be relinquished by the individual must be within a forest reservation and those to be taken by him must be vacant and open to settlement. It is incumbent upon one who wishes to take advantage of this standing offer to bring himself within the terms thereof, not only as to the land he proposes to relinquish, but also as to that which he proposes to take in exchange. It is his duty to inform himself as to the character and condition of the land he proposes to select and to honestly disclose the facts thus ascertained. The local land officers with whom the papers are to be filed cannot reasonably be expected to have a personal knowledge of the conditions and character of all the public lands within their district. Much less can the land officers at Washington be expected to have a personal knowledge thereof."

In *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.*, 112 Fed. 4, 50 C. C. A. 79, 61 L. R. A. 230, the court considered a number of cases which support these views. To allow the applicant to present his own proofs under the circumstances depicted, in the absence of and without notice to adverse claimants, and when the land office is without knowledge regarding the condition of the land excepting as informed by the applicant, and then hold that the patent is conclusive against the settler

and adverse claimant, would be equivalent to giving full force and validity to judgments rendered upon mere *ex parte* proof, without summons or notice to the defendants to be bound by the judgments. That to enforce a patent or judgment obtained under such circumstances is contrary to legal principles and constitutional guaranties, and might result in great injustice to adverse claimants, is apparent. We do not wish to be understood as holding that patents issued without notice upon vacant land are not valid, nor to determine regarding the validity of a patent issued after the adverse claimant has presented, or had an opportunity to present, his proofs to the land office. In *Rose* v. *Richmond*, 17 Nev. 65, a patent issued under a second application for one on the same ground over which adverse suit was pending was set aside, and it was held that, if a patent was issued without authority of law, it was absolutely void. In *South End Mining Company* v. *Tinney*, 22 Nev. 19, it appeared that several years after plaintiff had made application for a patent to a mining claim, and the notices and time for starting adverse proceedings had expired, and plaintiff had not paid for the ground nor obtained the final certificate from the receiver, and had ceased to do the annual assessment work, defendant's grantor relocated a portion of the ground and held continuous possession thereafter. A year after the relocation, plaintiff, without defendant's knowledge, obtained a patent to the original claim, after submitting to the register and receiver of the land office affidavits to establish the fact that the assessment work had been done on the claim each year as required by the mining laws, when, in fact, it had not been done. It was held that this was a fraud upon the defendant, and that the plaintiff, relying upon the patent, could not recover.

The court went behind the patent and inquired into the regularity of the proceedings, the sufficiency and character of the evidence submitted on the application for the patent, and the defendant was permitted to introduce testimony before the court to contradict the statements set forth in the affidavit, the sufficiency of which had already been passed upon by the register and receiver before issuing the final certificate or receipt for the money for the land. In the opinion by Bigelow, J., it

was said:  "Of the right of the defendants to set up an equi-
table defense to an action for the possession of lands there can
be no question, and, as to this defense, the case is to be tried
in the same manner and upon the same principles that would
apply to an original bill in equity brought for the same pur-
pose.  (Pom. Rem. & Rem. Rights, sec. 87, et seq.; Bohall v.
Dilla, 114 U. S. 47, 5 Sup. Ct. 782, 29 L. Ed. 61; Quinby v.
Conlan, 104 U. S. 420, 26 L. Ed. 800; Estrada v. Murphy, 19
Cal. 248, 273; Hollinshead v. Simms, 51 Cal. 158; Treadway v.
Wilder, 8 Nev. 93; Dutertre v. Shallenberger, 21 Nev. 507;
Suessenbach v. Bank, 5 Dak. 477, 41 N. W. 662.)   *   *   *
Obtaining a patent to the defendants' mine was under the cir-
cumstances a positive and unequivocal fraud upon them.
*   *   *   These are that without the publication or posting of
any notice of its intention so to do, and without the defendants'
consent or knowledge, the plaintiff has secretly and surrep-
titiously obtained a patent to their property.   This is entirely
sufficient to require a court of equity to hold it a trustee of
that title for the defendants.   This has often been decided by
the courts, and the principle upon which it is done is quite
clearly stated by Judge Sawyer in the case of Lakin v. Mining
Co., 11 Sawy. 231, 238, 25 Fed. 337, as follows:  'Where one
party wrongfully obtains the legal title to land, which, in
equity and good conscience belongs to another, whether he acts
in good faith or otherwise, he will be charged in equity as a
constructive trustee of the equitable owner. That, I think, is a
doctrine established by the following cases: Wilson v. Castro,
31 Cal. 420; Salmon v. Symonds, 30 Cal. 301; Bludworth v.
Lake, 33 Cal. 256; Hardy v. Harbin, 4 Sawy. 549.   *   *   *'
The defendant there had secretly and clandestinely, but with-
out positive fraud, and without any fiduciary relation existing
between the parties, by means of an old and dormant appli-
cation, obtained a patent to the plaintiff's mine.  Upon the
ground stated in the quotation, it was decided that the
defendant held this title in trust for the plaintiff, and it was
compelled to convey it to him.

"In Hardy v. Harbin, 4 Sawy. 536, Fed. Cas. No. 6,060, Jus-
tice Field said (page 540):  'The bill is filed for the purpose
of having a trust declared and enforced, the plaintiff relying

upon the established doctrine that whatever property is acquired by fraud, or under such circumstances as to render it inequitable for the holder of the legal title to retain it, a court of equity will convert him into a trustee of the party actually entitled to its beneficial enjoyment.' The title involved was a United States patent, and it was again decreed to be held in trust for the true owner. In *Sanford* v. *Sanford*, 19 Or. 3, 13 Pac. 602, decided by the Supreme Court of Oregon, and subsequently affirmed by the Supreme Court of the United States (139 U. S. 642, 11 Sup. Ct. 666, 35 L. Ed. 290), one had by a false affidavit made in the land office obtained a patent to a piece of land upon which another had settled, and which equitably belonged to the latter. It was again decided that the patentee held the legal title in trust for the equitable owner. In *Rector* v. *Gibbon*, 111 U. S. 276, 291, 4 Sup. Ct. 605, 28 L. Ed. 427, the Supreme Court of the United States, speaking òf the case of *Johnson* v. *Towsley*, 13 Wall. 72, 20 L. Ed. 485, said: 'The decision aptly expresses the settled doctrine of this court with reference to the action of officers of the land department that when the legal title has passed from the United States to one party, when in equity and good conscience and by the laws of Congress it ought to go to another, a court of equity will convert the holder into a trustee of the true owner and compel him to convey the legal title.' " Although the plaintiff and respondent may be considered a constructive or other trustee for the appellants when they have taken no steps to acquire title, these cases support the position that it would be inequitable to allow it to recover if the appellants were in possession of the land at the time it was selected and patented.

In ·a late case (*Brandon* v. *Ard*, 211 U. S. 18, 29 Sup. Ct. 1, 53 L. Ed. 68), similarly in principle to the selection in an *ex parte* proceeding of lands in lieu of others surrendered in a forest reservation as involved in the pending action, a railroad company had selected as indemnity to supply alleged deficiencies in place limits, and obtained patent for, a piece of land which was in actual possession of Ard, and had been in his possession prior to the making of an order by the land office and the secretary of the interior withdrawing the land

from sale or settlement.   Brandon and Pratt purchased the land from the company, and the trial and supreme courts of Kansas sustained the patent, and rendered judgment against Ard.   The decision of the state court was reversed (174 Kan. 424, 87 Pac. 366, 118 Am. St. Rep. 321), and Ard was allowed to retain the land, although the claims made against him in the suit were based on patents issued subsequently to the rejection by the land office of his own application for the land. After holding that Ard was not bound or affected by a suit to which he was not a party, brought by the attorney-general of the United States at the instance of the secretary of the interior to cancel the patent, and that he "acquired an equitable right to the land that could not be displaced by the wrongful act of the local land office," the Supreme Court of the United States, after referring to the case of *Shepley* v. *Cowan*, 91 U. S. 330, 23 L. Ed. 424, quoting from its former decision, said: "'Within the authority of that case, we think the defendant has shown an equity prior to all claims of the railway company. * * * The law deals tenderly with one who in good faith goes upon the public lands, with a view of making a home thereon. * * * The policy of the federal government in favor of settlers upon public lands has been liberal. It recognizes their superior equity to become the purchasers of a limited extent of land, comprehending their improvements over that of any other person. (*Clements* v. *Warner*, 24 How. 394, 397, 16 L. Ed. 695.)'"

To the various exceptions to the rule that a patent is conclusive, we think should be added cases like the present one, where the patent has been issued in a proceeding to which the claimants having prior possession of the land were not made parties or given notice, and that grave injustice would result in holding that they cannot attack a patent the issuance of which they were not given an opportunity to oppose, and which if held valid would deprive them of prior existing rights.

On behalf of respondent, it was suggested on the argument that the patent would relate back to the time of the issuance of the receipt or certificate, but the record is silent in this respect, and contains no reference as to when or whether any

receipt or certificate issued. One of the respondent's witnesses testified that he knew the appellants had been in possession for a period of six months or more prior to the date of the patent. As the record contains nothing regarding the time the application for the patent was filed, nor as to when or whether any affidavit or proofs were submitted that the land was vacant, if it may be presumed that affidavits that the land was vacant were submitted, there is no presumption that they were filed six months before or any definite time previous to the issuance of the patent. Hence the uncontradicted evidence submitted by the plaintiff and respondent shows that the appellants were in possession of the land in controversy at the time of the issuance of the patent and for six months or more prior, and there is no evidence indicating that they were not in possession, or that the land was vacant at the time the application for patent and the proofs in support thereof were filed. A condition shown to exist at a particular time is presumed to continue thereafter, but there is no presumption that it had continued for any length of time previously. (Lawson's Presumptive Evidence, pp. 167, 191, and cases there cited.) In *Bullock* v. *Wilson*, 5 Port. 338, it was held that a patent of itself was not evidence of title in a suit commenced anterior to its date.

The patent being regular on its face, its introduction in evidence alone raised a presumption that the government had conveyed the land to the Aztec Land and Cattle Company, Limited, and that the land was vacant at the time of its issuance. This presumption is overcome by the proof that the land was in the possession of the appellants at the time of, and for more than six months prior to, the date of the patent. If it had not been overcome, the presumption that the land was vacant would not have run backward any more than a showing that the appellants were in possession would have raised a presumption that they had been in possession previously to the time shown by the testimony. No evidence of the incorporation of the Aztec Land and Cattle Company, Limited, nor any resolution by it authorizing the execution of a deed or power of attorney, was introduced. The power of attorney which was admitted, and which purports to be signed by the

company, was dated and acknowledged at the City of New York on the 29th day of May, 1906, by Albert Strauss, who signed as first vice-president, and by Robt. M. Murray, who signed as secretary. It recited that whereas on that day the company surrendered to the United States by deed of conveyance eighty acres of land in Arizona, "by which it became entitled to select other lands of equal acreage in lieu thereof: Now, therefore, the said Aztec Land and Cattle Company, Limited, has made, constituted, and appointed * * * its true and lawful attorney for it and in its name, place, and stead, to enter into and take possession of each and every tract of public land in any state or territory of the United States that has been or may hereafter be selected by it in lieu of the land surrendered to the United States, as aforesaid."

This is no proof, and raises no presumption, that a selection of or application for the land described in the patent was made on that day or at any other time, nor that proof of the character of the land was made to or accepted by the land office at Carson City or Washington on that day or at any other specified time, and there is no evidence in the record from which it can be inferred that any evidence or proofs regarding the character or vacancy of the land was submitted to the land office upon any day before or after the time at which appellants are shown to have been in possession. The burden of proving ownership was upon the respondents, as it always is upon the party alleging it when denied, and it was not incumbent upon the appellants to establish a negative. (*Jones* v. *Prospect Mountain Tunnel Company*, 21 Nev. 339.) If the respondent is to rely upon the patent from a time previous to its issuance, it should supply evidence on a new trial of the facts showing the previous date upon which by relation it took effect; and, if the land was vacant at that time, a possession in appellants initiated later could not avail them. On the other hand, if the appellants were in possession at the time the patent took effect, that fact would appear directly, and whichever party is entitled would recover upon definite evidence, which would be more satisfactory than to rely upon a strained presumption, which might work an injustice.

Another contention of appellants is that respondent is with-

out power to hold the land because it is not necessary for the operation of a railroad, the purpose for which respondent is incorporated, as specified in its articles of amalgamation. The allegations of the answer do not appear to raise any issue in this regard. We do not mean to determine that such an issue can be properly raised in this action. (*Whitman Gold Mining Company* v. *Baker*, 3 Nev. 386; 10 Cyc. 1134.)

It is claimed that the respondent must show that it or its grantors had possession prior to the possession of the appellants, and that a demand was made upon the appellants for possession before respondent can recover. But, if the land was vacant at the time the patent would take effect by relation, it would establish a complete title in the respondent on which it could recover without showing a prior possession by the respondent or its grantors. If the appellants were not making any claim to the land as against the patent, and had been previously in rightful possession, it would be necessary to make a demand upon them before judgment could be recovered against them for costs. In 15 Cyc. 56, it is said: "Notice to quit or demand for possession is necessary, and as a rule is only necessary, where the relation of landlord and tenant exists, or where there is a privity or connection of title between the parties. Within this rule, or as qualifications of or exceptions thereto, such notice or demand is required where defendant has so entered and holds possession that he cannot be treated as a trespasser; where one holds under license from the crown, under an executory contract for purchase, under a contract for purchase from an infant, under a sublease, or under an agreement, with relation to a division line and occupation, which amounts to a license to occupy until revoked. But notice or demand is unnecessary where defendant has repudiated or otherwise terminated the prior relationship, and has asserted a hostile possession or claim; * * * where he denies or disclaims plaintiff's title, interest, or right of possession, and holds adversely or independently, in hostility to plaintiff, and under a claim of right in himself."

It is contended that the ruling on the motion for nonsuit can be reviewed only on a motion for a new trial, but an order granting or refusing a motion for a nonsuit depends upon

whether there is any evidence to support a judgment in favor of the plaintiff, and is a question of law, and is different from one relating to the weight of conflicting evidence, which is a question of fact for a jury and reviewable by motion for a new trial. In considering and quoting from some cases bearing on this subject, Hayne, in his work on New Trial and Appeal, at section 112, states: "The ruling on motion for nonsuit may be reviewed either on motion for a new trial or on appeal from the judgment. 'The question presented on motion for a nonsuit is a question of law, and in a statement on motion for a new trial should be specified as an error of law.'"

We do not understand that respondent is insisting upon other technical objections which were made.

The judgment of the district court is reversed, and the case is ordered remanded for a new trial.

Sweeney, J.: I concur.

Norcross, C. J., dissenting:

Defendants at the date of the issuance of the patent under which plaintiff claims were occupants and in such possession thereof that the land in controversy upon said date could not be regarded as vacant land within the meaning of the acts of Congress governing the issuance of such patents. (Act of June 4, 1897, c. 2, 30 Stats. 36; Act of June 6, 1900, c. 791, 31 Stats. 588, 614; *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.*, 112 Fed. 4, 50 C. C. A. 79, 61 L. R. A. 230; *Shaw* v. *Kellogg*, 170 U. S. 312, 18 Sup. Ct. 632, 42 Pac. 1050; *Kern Oil Co.* v. *Clark*, 30 Land Dec. Dep. Int. 550, 555.) There is nothing in the record, however, which shows when the patent was applied for, or that defendants were in possession upon the date of such application. There is testimony that defendants were known to be' in possession six months or more prior to August, 1907. There is a recital in the power of attorney to Hugh H. Brown that the Aztec Land and Cattle Company surrendered their land within the forest reserve back to the government on May 29, 1906. The forms required by the general land office indicate that contemporaneous with the relinquishment of the forest reserve land to the United States the selection of the lieu land is made and accompanied with

affidavits "showing the lands to be nonmineral in character and unoccupied." (30 Land Dec. 569.) The statute did not provide what proof should be offered to support such an application, nor did it provide for any notice. The land office, however, adopted regulations requiring proof that the land was both vacant and open to settlement. (*Cosmos Co.* v. *Gray Eagle Oil Co.*, 190 U. S. 301, 314, 23 Sup. Ct. 692, 47 L. Ed. 1064.)

If, as a matter of fact, the land is vacant at the time of the application for the lieu land and the proofs in support thereof are offered, any occupation thereafter could not in my judgment be set up as against a patent actually issued. Upon the other hand, it is my conclusion that if the land is actually occupied, and hence not vacant, and proofs are fraudulently made to the effect that the land is vacant, an occupant of the land, especially one who had no notice of the application, could set up such fraud as a defense in a suit of the character now under consideration. This view, I think, finds support in the following authorities: *Johnson* v. *Towsley*, 13 Wall. (80 U. S.) 72, 20 L. Ed. 485; *Shepley* v. *Cowan*, 91 U. S. 330, 23 L. Ed. 424; *Moore* v. *Robbins*, 96 U. S. 530, 24 L. Ed. 848. It is the general rule, however, that an occupant of the public land without title, and without any attempt being made to secure title, cannot resist the enforcement of the patent of the United States on the ground of such occupancy. (*Sparks* v. *Pierce*, 115 U. S. 408, 6 Sup. Ct. 102, 29 L. Ed. 428; *Treadway* v. *Sharon*, 7 Nev. 37; *Whittaker* v. *Pendola*, 78 Cal. 296, 20 Pac. 680; *Cragg* v. *Cooper*, 150 Cal. 584, 89 Pac. 346; *Helstrom* v. *Rhodes*, 30 Utah, 122, 83 Pac. 730.)

The patent issued to the Aztec Land and Cattle Company was regular and lawful upon its face, and it is presumed to have been regularly issued. Cyc. correctly states the law as follows: "Under the rule that public officers are presumed to do their duty, the presumption is that all necessary preliminary steps to the issuance of a patent have been taken, and that the patent was regularly issued and is valid and passes the legal title. But the presumption of the validity of the patent may be rebutted by proof that it was issued without authority of law or was obtained by fraud; the burden of proof being upon

the person who seeks to impeach the patent." (32 Cyc. p. 1032; *Hooper* v. *Young*, 140 Cal. 275, 74 Pac. 140, 98 Am. St. Rep. 50; *Harkrader* v. *Carroll*, 76 Fed. 474.)

The proof upon the part of the plaintiff establishes the fact that its immediate grantor had a government patent to the land in controversy, and that it had entered into possession of the land embraced within such patent, excepting the portion occupied by defendants, and a small portion not included in the deed of plaintiff's grantor.

Against this showing there was nothing but the bare occupancy of the defendants, which is insufficient to overcome the presumptions in favor of the patent. Had the defendants, instead of resting upon the proofs offered by the plaintiff, proved that they were in occupation of the land prior to the application for the patent and had no notice of the proceedings upon which it had been obtained, I am of the opinion plaintiff could not have recovered, but it cannot be said that the proofs upon the part of the plaintiff were not sufficient to warrant the court in denying the motion for a nonsuit, or to support the judgment in the absence of other evidence.