[No. 1114.]

WILLIAM W. NICKALS, APPELLANT, v. PETER WINN,
RESPONDENT.

LAND—PRE-EMPTION CLAIM UNDER U. S. LAWS—WHEN CANNOT BE MADE.—
    Plaintiff was in the possession of a large tract of unpatented agricultural
    land, which he had inclosed and was cultivating.   He failed to avail him-

self of the benefits of the pre-emption laws given to the first settler upon public lands. After the expiration of time within which his prior right of entry and purchase could have been exercised, the defendant entered upon one hundred and sixty acres of land, within plaintiff's inclosure, and settled thereon. At the time of this entry defendant was entitled to purchase unappropriated land. He followed the mode of procedure prescribed by the homestead laws of the U. S.: *Held*, that defendant did not acquire a right to pre-empt the land settled upon by him.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The case was presented to the district court upon the following agreed statement of facts, viz:

I. The land mentioned in the complaint, as that on which the hay in question was grown and cut, is within the inclosure, a wire fence about four feet high, placed around by the plaintiff, which inclosure has existed around said land, together with a large quantity of other pasturage and hay land, for several years, and still is existing. The plaintiff, for more than five years past, until the entry of defendant upon the land in the complaint mentioned, had been in the peaceable possession of the land inclosed within his fence, and had expended several thousand dollars in fencing and improving the same.

II. That said land was surveyed by the United States government and came into market; that the three months time having expired after said land came into market, during which time plaintiff had a preferred right of entry thereof, and plaintiff failing to purchase the same from the U. S. government within said three months, the defendant, on March 23, A. D. 1880, being a qualified homesteader, made a *bona fide* entry of said land, under the soldiers' and sailors' homestead act of congress, at the U. S. land office at Eureka, Nevada.

III. That plaintiff instituted a contest on the fifth day of April, 1880, against defendant in the land office in Eureka, Nevada, for said land.

IV. That under the afore-mentioned soldiers' and sailors' act of congress, the defendant was allowed six months in which to make settlement upon his said claim, and being the land in the complaint in this action described.

V. That in said contest above mentioned in said land office, plaintiff obtained a decision in his favor, before the local officers, and adverse to the defendant, on or about the first day of September, 1880.

VI. That from said decision defendant appealed to the general land office at Washington, whereupon said decision was reversed and the entry of defendant declared valid. That plaintiff took no appeal from said decision, and the ruling and decision of the land department remained, and is absolute, on the said first contest. That said final decision was received by defendant on or about April 15, 1881, previous to the cutting of the hay in controversy. That defendant thereupon, and on or about June 5, 1881, and previous to the cutting of the hay in question, entered upon the said land in good faith (plaintiff objecting to such entry upon such land so previously filed on by defendant), claiming title adversely to plaintiff, and retained possession of said land ever since, and defendant so in possession of said land, adversely to plaintiff claiming the same in good faith, under said homestead entry, cut said hay in controversy thereon, and retained possession of said hay until the same was replevied in this action, after demand duly made by plaintiff therefor, on the day preceding the commencement of this action.

VII. That afterwards plaintiff contested said entry last mentioned of defendant, on the ground of abandonment, in said local land office, which contest was therein decided in favor of plaintiff, from which said decision defendant appealed to said general land office at Washington, which appeal and contest is still pending and undetermined. * * * That all the lands inclosed in plaintiff's fence are a part of the public domain of the United States.

*Bishop & Sabin,* for Appellant:

I. If respondent was a trespasser upon appellant's lawful possession of the land on which the hay was grown and cut, then these actions were and are properly brought, and can be maintained. (*Halleck* v. *Mixer,* 16 Cal. 574; *Kimball* v. *Lohmas,* 31 Cal. 155; *Rogers* v. *Cooney,* 7 Nev. 213; *Courchaine* v. *Bullion M. Co.,* 4 Nev. 369.)

II. The respondent was a mere naked trespasser in entering, without appellant's consent, upon the land whereon the hay in controversy was grown, and by him cut, and he has and could acquire no rights, as against appellant, by virtue of any homestead or pre-emption entries of said land which he may have made. (*Atherton* v. *Fowler*, 96 U. S. 513; *Hosmer* v. *Wallace*, 97 U. S. 575; *McBrown* v. *Morris*, 59 Cal. 64; *McBrown* v. *Emerson*, Id. 319; *McBrown* v. *Wilson*, Id. 318; *Belk* v. *Meagher*, 104 U. S. 279.)

III. If respondent could now obtain patents for the land by him applied for, the patents would be void, and no defense to these actions. (*Stoddard* v. *Chambers*, 2 How. U. S. 295; *Rose* v. *Richmond M. Co.*, recently decided.)

IV. While it may not be material in these cases, it may be of interest to note the rulings of the department of the interior under the decisions in *Atherton* v. *Fowler*, 96 U. S. 513; 6 Copp, L. O., 92, Circular Instructions; *Lyons* v. *Stevens*, Id. 107; *Shadduck* v. *Horner*, Id. 113; *Hannum* v. *Linton*, Id. 173; *Alex. Mead*, 7 Id. 87; *Molyneux* v. *Young*, Id. 107. As showing the contrary rulings of the department, overruling the United States supreme court and other courts, see *Powers* v. *Forbes*, 7 Copp, L. O., 149; *Nickals* v. *Burbank*, 8 Id. 57; *Marks* v. *Bray*, 8 Id. 139.

*Baker & Wines*, for Respondent:

I. The acts of congress which provide for the disposal of the public lands delegate to certain officers the right to determine who of certain contesting claimants (in this case, appellant and respondent,) shall have the better right to purchase any portion of the public domain. Their determination when acting within the legitimate scope of their powers is final and conclusive. (*Johnson* v. *Towsley*, 13 Wall. 72.)

II. We claim that respondent was not, in any sense of the term, a trespasser. That from the date of the decision of the commissioner of the general land office upon a contest instituted by appellant, the latter was a trespasser, and the respondent had a legal right to enter upon the land quietly and peaceably, which he did, and cut the hay in dispute. Therefore this action will not lie. (34 N. Y. 363.) In the

cases referred to by appellant, the facts were entirely different from the facts of the case now before the court. The defendants in those cases were naked trespassers, entering upon the lands in the possession of the plaintiffs, by force, without any color of right, and in the face of an act of congress giving those in possession—the plaintiffs—a right to purchase the lands from the government, to the exclusion of all others.

By the Court, BELKNAP, J.:

. The plaintiff was in the possession of a large tract of unpatented land, which he had inclosed and was cultivating. He failed to avail himself of the benefits conferred by the pre-emption laws of the United States upon the first settler upon public lands, and, after the expiration of the period within which his prior right of entry and purchase could have been exercised, the defendant entered upon one hundred and sixty acres of the land and settled thereon. At the time of his entry defendant was entitled to purchase unappropriated public lands, as provided by the homestead laws of the government. He followed the mode of procedure prescribed by these laws in making his application to purchase. A contest between plaintiff and himself, touching the validity of his entry of the land in the land office, was determined by the officers of the land department in his favor, and after such determination he cut from the land a quantity of hay, which is the subject of the controversy in this action.

The question presented is, whether, under these facts, the defendant acquired a right to pre-empt the portion of the land settled upon by him.

A similar question was presented to the supreme court of the United States, in the case of *Frisbie* v. *Whitney*, 9 Wall. 193. In that case the court preferred to place its decision upon other grounds, but confessed a serious difficulty in regard to the complainant's right to make pre-emption by a forcible intrusion upon land cultivated, inclosed and peaceably occupied by another man.

In *Atherton* v. *Fowler*, 96 U. S. 513, the court, to use its own expression, was met with the question directly in its way, and determined that an intrusion, such as was made by the

defendant here, could not initiate a right of pre-emption. That was an action of replevin for hay cut upon the land. It was commenced by Page, who died during the progress of the litigation, and was thereafter represented by Atherton, his executor. The hay was cut by Fowler upon a portion of a larger tract of land then being cultivated by Page and in his actual possession. Fowler claimed to have made a valid pre-emption settlement upon the land. His entry was without the consent of Page.

Under these facts the court proceeded to consider whether the land was subject to the pre-emption entry of the defendant, and in the discussion employed the following language:

"Undoubtedly there have been cases, and may be cases again, where two persons making settlement on different parts of the same quarter section of land may present conflicting claims to the right of pre-emption of the whole quarter section, and neither of them be a trespasser upon the possession of the other, for the reason that the quarter section is open, unenclosed, and neither party interferes with the actual possession of the other. In such cases the settlement of the later of the two may be *bona fide,* for many reasons. The first party may not have the qualifications necessary to a pre-emptor, or he may have pre-empted other land, or he may have permitted the time for filing his declaration to elapse, in which case the statute expressly declares that another person may become pre-emptor, or it may not be known that the settlements are on the same quarter. (*Johnson* v. *Towsley,* 13 Wall. 72; Sec. 15, Act of Sept. 4, 1841.)

"But all of these cases suppose that the parties began their possession and made their settlements and built their houses on lands not in the actual possession of another. It is not to be presumed that congress intended, in the remote regions where these settlements are made, to invite forcible invasion of the premises of another, in order to confer the gratuitous right of preference of purchase on the invaders. In the parts of the country where these pre-emptions are usually made, the protection of the law to rights of person and property is generally but imperfect under the best of circumstances. It can-

not, therefore, be believed, without the strongest evidence, that congress has extended a standing invitation to the strong, the daring and the unscrupulous to dispossess, by force, the weak and the timid from actual improvements on the public land, in order that the intentional trespassers may secure by these means the preferred right to buy the land of the government when it comes into market." (p. 516.)

That case differed from the present one in this: There the plaintiff had not forfeited his prior right of pre-emption; here he has, and from this difference in the facts the cases are sought to be distinguished.

The portion of the opinion above quoted shows the court considered that, in order to create a right of pre-emption, there must be a settlement upon unsettled land—a condition that cannot exist when the land is in the occupation of another, regardless of the question whether that other is a person enti-- tled to make pre-emption. A subsequent portion of the opinion announces this view very forcibly. After stating that the plaintiff and others had settled upon the land in person, inhabited and improved it and erected dwellings upon it, the opinion proceeds: "Unless some reason is shown, not found in this record, these were the persons entitled to make pre-emption, and no one else. But suppose they were not. Does the policy of the pre-emption law authorize a stranger to thrust these men out of their houses, seize their improvements and settle exactly where they were settled, and by these acts acquire the initiatory right of pre-emption? The generosity by which congress gave the settler the right of pre-emption was not intended to give him the benefit of another man's labor, and authorize him to turn that man and his family out of their home. It did not propose to give its bounty to settlements obtained by violence at the expense of others. The right to make a settlement was to be exercised on unsettled land; to make improvements on unimproved land. To erect a dwelling house did not mean to seize another man's dwelling. It had reference to vacant land; to unimproved land, and it would have shocked the moral sense of the men who passed these laws if they had supposed that they extended an invitation to the pioneer population to acquire inchoate rights

to the public lands by trespass, by violence, by robbery, by acts leading to homicides and other crimes of less moral turpitude." (p. 519.)

These views were followed by the same court in *Hosmer* v. *Wallace*, 97 U. S. 575, and in *Trenouth* v. *San Francisco*, 100 U. S. 251, and by the supreme court of California in *Hosmer* v. *Duggan*, 6 Pacific Coast Law Journal, 615; *Davis* v. *Scott*, Id. 699, and in *McBrown* v. *Morris*, 8 Id. 708.

Upon the authority of these cases we regard the law as settled adversely to the pre-emption claim of the defendant.

The judgment in his favor must be reversed, and the district court directed to enter a judgment in favor of the plaintiff, with costs; and it is so ordered.

*Bishop & Sabin*, for Appellant:

*Baker & Wines*, for Respondent: