# THE SUPREME COURT

#### OF THE

## STATE OF NEVADA

### JULY TERM, 1911

[No. 1872]

MARGARET LYTLE, AS ADMINISTRATRIX OF THE
ESTATE OF CHARLES LYTLE, DECEASED, RESPOND-
ENT, *v.* P. H. DEVLIN, APPELLANT.

1. TENANCY IN COMMON—MUTUAL RIGHTS OF COTENANT—PUR-
CHASE OF OUTSTANDING TITLE.
   One in possession of government land as cotenant of another
   cannot acquire a homestead right thereto so as to exclude his
   cotenant, but such title will inure to the benefit of both, upon
   the tenant who did not purchase contributing an equal part of
   the consideration actually paid.

APPEAL from the Fourth Judicial District Court of the
State of Nevada, in and for Lincoln County; *George S.
Brown,* Judge.

Action by Margaret Lytle, as administratrix of Charles
Lytle, deceased, against P. H. Devlin. From a judgment
for plaintiff, defendant appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Chas. Lee Horsey* and *M. M. Warner,* for Appellant:
There being no dispute as to the facts in this case, which

are fully set forth in the appellant's answer to the respondent's amended complaint, it would seem the only question for this court to decide is the law applicable thereto.

The constitution of the State of Nevada (third subdivision of sec. 24—Ordinance) provides as follows:

"That the people inhabiting said territory do agree, and declare, that they forever disclaim all right and title to the unappropriated public lands lying within said territory and that the same shall be and remain at the sole and entire disposition of the United States  *  *  *."

This provision is incorporated and is a part of the constitution of every state which has been admitted into the Union by act of Congress, and is intended to give to the federal government the exclusive power and right to dispose of its public lands within the several states, and to prohibit such states and the citizens therein from interfering, either by contract among themselves or with others, or in any other manner interfering, with the right of the government to dispose of its public lands to its citizens.

In the case at bar the undisputed facts alleged in the appellant's answer and admitted to be true by the respondent are in substance as follows:

"That for more than seven years prior to the filing of the homestead by the appellant the land embraced in his said entry was public land of the United States subject to be entered as a homestead.

"That long prior thereto the respondent's husband (now deceased) and the appellant, in violation of the laws of the United States of America, for the convenience of running their stock ranch, unlawfully fenced, took possession of, used and occupied that portion of the public domain embraced in appellant's homestead entry.

"That in this trespass upon government land and the unlawful use and occupation thereof, it was agreed by and between them that the fruits and profits derived from such unlawful trespass should be divided between

them in the ratio of two-thirds thereof to the husband of the respondent, and the remaining one-third to the appellant herein."

Upon this admitted state of facts the trial court held that, by reason of such contract, understanding, or agreement, the appellant became so disqualified by reason of his relations to said deceased that he could not enter said tract as a homestead except as a trustee for the benefit of the heirs at law of his joint trespasser of such tract prior to his said homestead entry.

If this be the law, so applied by the court, its effect is such that the appellant can never make final proof upon said homestead entry, and his rights therein must of necessity revert back to the government of the United States, for the reason that the laws of the United States prohibit persons from entering government land and securing title thereto under the homestead law for the use or benefit either directly or indirectly for any other except the homestead entryman. Such entryman is required to make affidavit of this fact and the statutes of the United States make it a felony for any person to swear falsely as to such facts.

With this judgment and decree rendered by the lower court in force and effect, the appellant herein can never get title to his said homestead entry.

If the judgment of the lower court is the law applicable to such facts, then it is possible for the citizens of the State of Nevada or of any other state in the Union, not only to disqualify every person from entering public land under the homestead laws, but it would also, under a conspiracy, arrangement and agreement between all of its citizens to become cotenants in common and partners in the unlawful occupation and products of government lands within such state, enable them to practically own and control the possession and profits of all of the government lands lying within such state.

This condition would violate the letter and spirit of the provisions of the constitution of the State of Nevada in

regard to public lands and is a direct interference with the government of the United States in its disposition of its public lands lying within the State of Nevada.

In support of this contention, we cite the court to the following:

Prior to the issuance of patent, state courts have no power to deal with the title of public lands. (*Reaves* v. *Oliver*, 41 Pac. 353; *Gibson* v. *Chatteau*, 13 Wall. 92, 80 U. S. 534–537; *Jourdan* v. *Barrett*, 4 How. 169, 45 U. S. 924; *Woodruff* v. *Wallace*, 41 Pac. 357.)

*Frank R. McNamee*, for Respondent:

That there can be a tenancy in common as to possession only is too plain to admit of contention, and it is unnecessary to cite any authorities on this point.

It would seem that in the earlier history of our public land system the Congress of the United States recognized the rights of *bona fide* settlers in good faith who entered upon and improved the public lands of the United States under a color of title, and, in order to protect them in any outlay made for improvements, there was enacted by the Congress of the United States, on June 1, 1874, what is known as the "Occupying Claimants' Act," which provides as follows:

"That when an occupant of land, having color of title, in good faith has made valuable improvement thereon, and is in the proper action found not to be the rightful owner thereof, such occupant shall be entitled in the federal courts to all the rights and remedies, and, upon instituting the proper proceedings, such relief as may be given or secured to him by the statutes of the state or territory where the land lies, although the title of the plaintiff in the action may have been granted by the United States after said improvements were so made." (Fed. Stats. Anntd. vol. 6, p. 522.)

The act of March 9, 1865, sections 3814 to 3821, inclusive, and section 3351, Cutting's Compiled Laws, as amended in Statutes of 1907, p. 185, prescribe the mode of maintaining and defending possessory actions to the

public lands of this state, and the district courts of said state have jurisdiction of such proceedings.

Respondent's title was such as is recognized by our courts, and is protected by our statute. (*Courtney* v. *Turner*, 12 Nev. 348; *Nickals* v. *Winn*, 17 Nev. 194; *Atherton* v. *Fowler*, 96 U. S. 513.)

The state courts have jurisdiction over possessory actions for the public lands of the United States, situate within this state, notwithstanding the enabling act disclaims all right and title to the unappropriated public lands lying within the State of Nevada, and that the same shall be and remain at the sole and entire disposition of the United States.

An action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claim. (Stats. 1907, p. 185.)

And a party may maintain an action to quiet title whether he be in or out of possession, and whether his title be legal or equitable. (*Scorpion S. M. Co.* v. *Marsano*, 10 Nev. 379.)

And one in the possession of realty may sue another claiming an interest therein. (Pomeroy's Remedies and Remedial Rights, 369; *Lovelady* v. *Burgess*, 52 Pac. 25.)

And the complaint need not state the source of plaintiff's or defendant's title. (*Rough* v. *Simmons*, 65 Cal. 227; *Rose* v. *Richmond M. Co.*, 17 Nev. 51.)

If the relationship of tenancy in common did not exist between appellant and respondent, we still maintain, under the authorities above cited, that the courts would have jurisdiction of the question of possession under existing conditions, and that the respondent would have the right to have her title quieted in the land to the extent of her possessory interest therein; and that after the United States had parted with its title and the appellant had received patent, the equity subject to which he holds it could be enforced, in so far as the legal title is concerned, but not before; but that the courts may deal with the possession of lands prior to the issuance of patent,

or enforce contracts between the parties concerning the land, but they cannot transfer a title which is yet in the United States, and can only determine the right of possession thereto. (*Nicholas Marquez* v. *John D. Frisbie, et al.*, 101 U. S. 473.)

It is conceded that a tenancy in common existed between the appellant and the respondent from the year 1900 up to the time of the commencement of the suit, and, such being the case, the appellant could acquire no interest in the land in question antagonistic to the rights of his coowner; nor could he purchase or acquire any outstanding title for his own exclusive benefit; and any interest which he might acquire while the relationship of tenancy in common existed would inure to the benefit of his coowner. (*Barnes* v. *Boardman,* 9 L. R. A. 571, and cases cited, particularly the case of *Myers* v. *Reed,* 17 Fed. 406.) See also notes to *Jackson* v. *Baird,* 19 L. R. A. (N. S.) 591; 17 Am. & Eng. Ency. Law, 674.

There can be no question but that the entering of land under the homestead act is a purchase as the term is generally understood in the inhibition under the general law which prevents one tenant in common from taking any advantage of his coowner by the purchasing of an outstanding title for the benefit of himself, as the term purchase certainly means every mode of acquisition of an estate known to law, except that by which an heir on the death of his ancestor becomes substituted in his place, or by operation of law. (Bouvier.)

Webster's defines "purchase" as the act of seeking or acquiring property. Its more common meaning is the acquisition of title to property in another for a price, or equivalent; buying.

In *Manuel* v. *Wulff,* 152 U. S. 505, Chief Justice Fuller, speaking for the court, says: "By section 2322 it is provided that where such qualified persons have made a discovery of mineral lands, and complied with the law, they shall have the exclusive right to the possession and enjoyment of the same."

The same rule would apply to cases of homestead entries,

for public lands have always been treated as property in the fullest sense of the word, and so transferred, mortgaged and inherited; and it would seem without doubt that a homestead entry is a purchase of public land within the spirit and purpose of the law.

The statement of appellant's counsel that both the appellant and respondent were trespassers on the land in question cannot be taken as serious, for the pleadings admit that they both entered into possession of the land under the belief that they owned the same, and that they held the same under a good and valid title from their predecessor, and that they did hold the same under color of title, and had in good faith used, occupied and improved the land under an honest belief that not only the possession but the legal title vested in them at all times.

In *Wright* v. *Mattison,* 18 How. 56, the Supreme Court of the United States says: "The courts have concurred, it is believed without an exception, in defining color of title to be that which in appearance is title, but which in reality is no title."

Measured by this rule it is readily seen that the appellant and respondent had such a deed of conveyance as does give color of title.

A possessor of public government land with the intent to lawfully acquire title thereto from the government is not technically a trespasser, but acquires a possessory right having value, and being subject to sale. (*Waring* v. *Loomis,* 76 Pac. 570.)

Counsel for appellant seem to make a distinction between preemption of public land and the homesteading of public land; that is, under the old preemption act it was necessary for a party to be in possession and in the actual occupancy of the land before he could preempt the same; while under the homestead act of 1891 a person has six months to enter into possession after the filing of his declaratory statement. But we respectfully submit that the reasoning in the leading case cited in actions of this character, namely, *Atherton* v. *Fowler,* 96 U. S. 513, applies equally to homesteads under the act of

1891 as it did to preemption entries; and especially is this true in the case at bar where both appellant and respondent were in the actual possession of the land at the time of the alleged homestead entry and attempted ouster of the respondent; and the same reasons that prompted the decision of the supreme court in so holding in *Atherton* v. *Fowler* apply equally to the case at bar.

A tenant in common cannot acquire a right of homestead to government land of which he is in possession for himself and his cotenant. (*Reinhart* v. *Bradshaw*, 19 Nev. 255; *Nickals* v. *Winn*, 17 Nev. 194; *Brown* v. *Killabrew*, 21 Nev. 437.)

Even though the land belonged to the United States when the state conveyed it to plaintiff, yet, he having inclosed, improved, cultivated and been in the actual possession of it, it was not subject to entry under the United States homestead laws, so that, notwithstanding defendant made such entry, he was not authorized to go on the land and oust plaintiff, and plaintiff may recover by ejectment. (*Carmichael* v. *Campodonico*, 95 Pac. 164.)

And where defendants were in actual possession of public land of the United States, inclosed by a substantial fence, and were using it for agricultural purposes, claiming title thereto, it was not subject to homestead entry, and plaintiff acquired no right of possession by filing a homestead declaration with the receiver of the land office, paying the fees, obtaining a certificate therefor, and taking peaceable possession. (*Cragg* v. *Cooper*, 89 Pac. 346.)

In this action the respondent was also entitled to a partition of the property as prayed for in her complaint, but the trial court did not order a partition, and respondent has saved no exception to the ruling of the court, and consequently is not entitled to be heard thereon in this appeal.

We respectfully contend that even though the relation of cotenancy did not exist, the judgment should be sustained as to the right of possession, and that under the existing conditions, where a tenancy in common does

exist, we have a right to rely most emphatically on the decision of the court in the case of *Atherton* v. *Fowler*, cited above, which has been followed by all of the Nevada and California decisions; and we respectfully submit that the judgment of the district court should be affirmed.

By the Court, NORCROSS, J.:

This is an appeal from the judgment upon the judgment roll alone. The above-named respondent brought an action in the Fourth Judicial District Court, in and for Lincoln County, against the above-named appellant, to quiet the title of the estate of Charles Lytle, deceased, to an undivided two-thirds of the southwest quarter of the southeast quarter of section 16, township 1 north, range 69 east, being a portion of what is known as the Rose Valley ranch in said Lincoln County, as tenant in common with the said appellant. The following facts are admitted by the pleadings:

On the 9th day of March, 1900, the said Charles Lytle in his lifetime and the appellant herein purchased from one A. G. Campbell, by deed of conveyance, the said Rose Valley ranch, which included the land in controversy herein. The deed to said lands from the said A. G. Campbell was taken in the name of said Charles Lytle, solely, and thereafter and on the 25th day of March, 1902, the said Charles Lytle, carrying out the understanding existing between them, conveyed to the appellant herein an undivided one-third interest in and to the said ranch property.

The following allegations, which raise no material issue of fact, are taken from the defendant's answer:

"That said Charles Lytle and the defendant herein were on the 2d day of July, 1907, and for more than seven years prior thereto had been, in the possession of, and entitled to the possession, as tenants in common, of the following-described portion of the public lands which during all of said time was subject to entry under the homestead laws of the United States, more particularly described as follows, to wit: The SW¼ of the SE¼ of section 16, town-

ship 1 north, range 69 east, M. D. B. and M. in Rose Valley, Lincoln County, State of Nevada; the same being used and occupied as a part and portion of what is commonly known and called the 'Rose Valley Ranch,' the said Charles Lytle claimed to own an undivided two-thirds thereof, and the said P. H. Devlin claiming to own an undivided one-third of said lands. That on or about the year 1884 the grantors and predecessors in interest of said Charles Lytle and of plaintiff and defendant herein constructed water ditches, and through said ditches conveyed a portion of the waters of Eagle Valley creek to and upon said lands and premises, and continuously thereafter irrigated a portion thereof, raised crops thereon, planted an orchard on a portion of said lands, fenced the same, erected substantial buildings thereon, consisting of dwelling houses, cellars, outhouses, corrals, sunk wells, and made other improvements on said lands; which said lands were continuously thereafter and up to the date of the death of said Charles Lytle, to wit, July 2, 1907, occupied and farmed by said Charles Lytle and said defendant, and subsequent to the death of said Charles Lytle were occupied and farmed by the said defendant and this plaintiff, and are now so occupied and farmed, and the products of the land so cultivated and of the orchard growing thereon shared between the plaintiff and defendant in accordance with their respective possessory interests as above set forth. That prior to the death of said Charles Lytle, as herein mentioned, and during the year 1906, and without the knowledge and consent of the said Charles Lytle, the said defendant, P. H. Devlin, filed on said land and premises a homestead in the United States land office at Carson City, Nevada, well knowing the same to be improved, cultivated, and occupied by himself and the said Charles Lytle as tenants in common, with the intent to obtain United States patent to the said above-described tract of land for his individual benefit, and the said defendant, by reason of said homestead filing, now claims to be the sole and exclusive owner of said lands and premises and

entitled to the exclusive possession thereof. That ever
since the death of the said Charles Lytle, and the appoint-
ment of plaintiff herein as such administratrix, the said
defendant, by reason of his homestead filing as aforesaid,
has claimed, and does claim the sole ownership and right of
possession of said land and premises, and denies the right
of the heirs of Charles Lytle, deceased, and the plaintiff, to
any right, title, interest, possession, or enjoyment in and
to said lands and premises or any of the products thereof;
and during the time since said homestead filing has
attempted to and did prevent the plaintiff herein from
gathering any of the products of said orchard, and enjoy-
ing any portion thereof, and will continue to prevent the
said plaintiff from gathering any portion of the fruit
growing in the orchard upon said lands unless restrained
by an order of this court. That the defendant has threat-
ened to dispossess the said plaintiff of said land embraced
in his said homestead filing and every part thereof, has
prevented plaintiff from erecting buildings thereon, and
will continue to prevent her from enjoying any possession
of said land, and will also prevent the heirs at law of said
Charles Lytle, deceased, from occupying said lands unless
restrained from so doing by an order of this court."

This case presents the sole question as to the right of
one tenant in common to acquire a homestead right to
government land of which he is in possession with a
cotenant so as to exclude from the possession of said
lands his said cotenant. The precise question presented
upon this appeal was determined by this court in *Rein-
hart* v. *Bradshaw,* 19 Nev. 255, contrary to the conten-
tion of the appellant on this appeal. In that case the
question, "Can a tenant in common acquire a right of
homestead to government land of which he is in the pos-
session for himself and his cotenants?" was answered in
the negative. The correctness of the decision in the
Reinhart case is well supported by authority. The Rein-
hart case was affirmed in *Brown* v. *Killabrew,* 21 Nev.
437, 440. In *Ramberg* v. *Wahlstrom,* 140 Ill. 182, 29 N. E.
727, 33 Am. St. Rep. 227, it was held "that tenants in

common stand in such confidential relations in regard to one another's interest that one of them is not permitted, in equity, to acquire an interest in the property hostile to that of the other, and that therefore a purchase by one tenant in common of an incumbrance on the joint estate or an outstanding title to it is held at the election of the other tenant in common within a reasonable time to inure to the equal benefit of both, upon his contributing an equal part of the consideration actually paid."

In the note to the later case, as reported in 33 Am. St. Rep. 228, the reporter cites the Reinhart case, *supra*, among many others, to the statement of law: "A cotenant cannot purchase an incumbrance or an outstanding title and set it up against the others for the purpose of depriving them of their interests." In the note to the case of *Rice* v. *St. Louis Ry. Co.*, 47 Am. St. Rep. 78, the Reinhart case, *supra*, is also cited, together with a number of other cases in support of the legal proposition that: "If either of them (cotenants) has acquired possession of the property under a conveyance from a common grantor or ancestor, his position is very much like that of a lessee receiving possession of the property from his landlord, in this, that he cannot, while he remains in possession, dispute the common title, nor deny to his cotenant any right to the possession of the property because of any defect in their common title, even though he has acquired a paramount adverse title."

The Supreme Court of California and the court of appeals of that state have in recent decisions gone so far as to hold that, quoting from the syllabus: "Public land of the United States actually occupied and possessed by one who has it inclosed by a substantial fence, and is using it for agricultural purposes, without other right, is not subject to entry by a qualified claimant under the homestead laws of the United States; and the process of obtaining from the officers of the United States a certificate of such entry, and a receipt for fees paid, in pursuance of a declaration of his intention to settle upon the land as a homestead, filed with them, does not authorize

him to go upon the land so possessed and oust the prior possessor, or to recover the possession in an action against him." (*Gragg* v. *Cooper,* 150 Cal. 584, 89 Pac. 346; *Carmichael* v. *Campodonico,* 7 Cal. App. 597, 95 Pac. 164.) See, also, *Nickals* v. *Winn,* 17 Nev. 188; *Short* v. *Read,* 30 Nev. 377.

The judgment is affirmed.